Argued and submitted November 23, 2004, affirmed May 3, 2006
See 206 Or App 593, 138 P3d 876 (2006) for opinion on attorney fees

NORTH MARION SCHOOL DISTRICT #15,
for the use and benefit of:
Gonzalo Aranda Trejo, William Alan Avery,
Eugene Beebe, Cory Breno, Joe Brockamp,
Ray Cannon, Ronald Cooper, Chuck Craig,
Keith Dossey, Allen Filer, Robin Fisk, David Flippin,
David Gast, Lucas Glenn, Darrell Gutherie,
Basilio Gutierrez, David Hill, Derek Holcomb,
Monte Holcomb, Jeff Jones, Darren King,
Fred Knipe, Donald Kuhns, John Ledoux,
James Manning, Ignacio Mejia Valencia,
Jose Luis Mejia Valencia, Guy Meyers,
Nathan Morris, Tod Mundell, Steven Nichol,
John Partlow, Nemesio Pina-Mondragon,
Jason Portlock, Basilio Rudometkin,
Clayton Sabine, Kirt Siegwald, Alan Sims,
Daniel Stephens, Jerry Tallmon, Dennis Tidwell,
Robert Tuttle, Martin Vandervies, Micah Walter,
Warren Wegleitner, Richard Witbeck, and Charles Wolcott,
*Appellants,*

*v.*

ACSTAR INSURANCE CO.;
American Home Assurance Company,
a foreign corporation;
OC America Construction, Inc.,
a foreign corporation;
and Christopher J. Vander Kley,
an individual,
dba Vander Kley & Co.,
*Respondents.*

0006-05846; A119438

136 P3d 42

Jacqueline L. Koch argued the cause for appellants. With her on the joint briefs were Koch & Deering, and J. Dana Pinney, and Bailey, Pinney & Associates.

Darien S. Loiselle argued the cause for respondents Acstar Insurance Co., American Home Assurance Company, and OC America Construction, Inc. With him on the brief were Kelly T. Hagan and Schwabe, Williamson & Wyatt, P.C.

Loren S. Scott argued the cause for respondent Christopher J. Vander Kley. With him on the brief were Rohn M. Roberts and Arnold, Gallagher, Saydack, Percell, Roberts & Potter, P.C.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Plaintiffs are employees on a public works project, and defendants are the general contractor, the subcontractor who employed plaintiffs, and the respective sureties of the general and subcontractor. Plaintiffs alleged that they provided labor for which they were not paid and alleged that each defendant was liable for their unpaid wages, liquidated damages, and statutory penalty wages. Plaintiffs and defendants filed motions for summary judgment, and the trial court granted defendants' motions, denied plaintiffs', and entered judgment in favor of defendants. We affirm.

We begin our discussion with the pertinent facts. North Marion School District hired defendant OC America Construction, Inc. (OC) to be the general contractor for a public improvement project. OC obtained a labor and materials bond from defendant American Home Assurance Company (AHA). Defendant Vander Kley was one of the subcontractors on the project. Vander Kley obtained two labor and materials bonds from defendant Acstar Insurance Co. (Acstar).[1]

After work on the project had begun, Vander Kley developed financial difficulties and did not pay his employees on time. In March 2000, OC wrote to Vander Kley demanding that he pay his employees on time. Then, in April 2000, Vander Kley became financially insolvent and could no longer pay his employees. OC informed Acstar of the situation, and Acstar prepared the paychecks for Vander Kley's employees. However, those paychecks were not timely issued. On May 8, 2000, plaintiffs provided notice to defendants of their claims for nonpayment of wages pursuant to ORS 279.528. The notices stated:

---

[1] *Former* ORS 279.029(4) (1999), *repealed by* Or Laws 2003, ch 795, § 332, required a contractor on a public improvement project to be bonded, and provided, in part:

"The successful bidder shall:

"* * * * *

"(b) If the contract is for a public improvement, execute and deliver to the public contracting agency a good and sufficient bond * * *."

In 2003, after the relevant events in this action, ORS chapter 279 was repealed. Or Laws 2003, ch 795, § 332. Unless otherwise stated, all references to provisions of ORS chapter 279 are to the 1999 versions of that chapter.

"Pursuant to ORS 279, notice is hereby given that [named employee] was an employee of Vander Kley & Co., and has a claim for wages for labor performed because he was not paid wages at the prevailing wage rate when those wages were due. Pursuant to ORS 652.140 and ORS 652.150 for, penalty wages because he was not paid such wages when due; and for his attorney fees incurred in an amount to be determined pursuant to ORS 652.200 and 279.365; in addition an amount equal to the unpaid wages as liquidated damages pursuant to ORS 279.356; and interest on all moneys owed; all against the bonds taken from American International Companies and ACSTAR Insurance Company for the work of Facility Improvements with the North Marion School District #15. Such labor was supplied to Vander Kley & Co."

Acstar delivered paychecks to plaintiffs on May 25, 2000.[2] After plaintiffs received their paychecks, they filed this action for penalty wages, liquidated damages, and attorney fees. Plaintiffs' complaint contained three claims for relief.[3] The first claim was captioned "Wage Claim, Statutory Penalty Wages," and alleged that plaintiffs were entitled to statutory penalty wages pursuant to ORS 652.150. The second claim for relief, captioned "State Minimum Wage Claim, Civil Penalty," alleged that "Defendant Vander Kley & Company was required to pay Plaintiffs at the then prevailing State of Oregon minimum wage rate for all hours worked, when those wages were due," and that Vander Kley failed to pay plaintiffs' wages when due and that plaintiffs are therefore entitled to a penalty under ORS 653.055.[4] Plaintiffs' third claim for relief, entitled "ORS 279.356 Liquidated Damages," alleged that defendants had failed to pay plaintiffs at the prevailing wage rate as required by ORS 279.350 and

---

[2] On July 10, 2000, Acstar made additional payments to 11 of the plaintiffs based on a finding by the Bureau of Labor and Industries that Vander Kley had misclassified those plaintiffs. Acstar originally conditioned those payments on the plaintiffs releasing all other claims but made unconditional payments on September 15, 2000.

[3] After the summary judgment motions were filed, plaintiffs filed an amended complaint. The amendments do not affect our analysis.

[4] Unlike plaintiffs' first claim for relief, the second claim does not reference, other than through incorporated allegations, any of the defendants other than Vander Kley.

that plaintiffs were entitled to an amount equal to the unpaid wages as liquidated damages.[5]

Plaintiffs and defendants each filed motions for summary judgment. The trial court concluded, among other things, that the sureties could not be liable for penalty wages, that plaintiffs failed to comply with the notice provisions of ORS chapter 279, and that plaintiffs' claims against Vander Kley were barred by his discharge in bankruptcy. Accordingly, the trial court granted defendants' motions for summary judgment on all claims and denied plaintiffs' motion.

On appeal, plaintiffs assert seven assignments of error, which together raise the following four issues:[6] (1) whether a surety is liable for penalty wages pursuant to ORS 652.150 in an action on a labor and materials bond under ORS 279.526; (2) whether late payment of wages also constituted a violation of the prevailing wage statute, ORS 279.350, entitling plaintiffs to liquidated damages pursuant to ORS 279.356; (3) whether plaintiffs' notice substantially complied with ORS 279.528; and (4) whether plaintiffs could obtain a judgment for penalty wages against Vander Kley despite Vander Kley's discharge in bankruptcy. Given our disposition of the first, second, and fourth issues concerning penalty wages, liquidated damages, and the liability of Vander Kley, we need not address whether plaintiffs' notice was sufficient because, even if it was, plaintiffs still would not be entitled to recover.

[5] The complaint begins with a section titled "Common Facts (ORS 279 Bond Claim)," under which plaintiffs allege, among other things, that "ACSTAR Insurance Co. and Home Assurance Company, by reason of their surety agreements, are indebted to Plaintiffs for their wages, penalty wages, liquidated damages and costs and attorney fees all as set forth hereafter." Each of the claims for relief incorporates the "Common Facts," but none of the claims specifically states that it is an action on the bond under ORS 279.526. On appeal, plaintiffs' arguments assume that their action against the sureties was an action on the bond under ORS 279.526.

[6] Plaintiffs' first assignment of error relates to both penalty wages and liquidated damages; the second, third, fourth, and seventh assignments of error all relate to the issue of penalty wages; the fifth assignment of error relates to the sufficiency of plaintiffs' notice; and the sixth assignment of error relates to whether Vander Kley can still be held liable despite his discharge in bankruptcy.

■ We begin with plaintiffs' arguments that the trial court erred in concluding that Acstar, Vander Kley's surety, could not be liable for penalty wages under ORS 652.150 in an action to recover against a bond under ORS 279.526. ORS chapter 279 governed, among other things, the bidding, awarding, and conditions of public contracts. Under ORS 279.029, a successful bidder for a public contract for public improvement was required to "execute and deliver to the public contracting agency a good and sufficient bond, to be approved by the public contracting agency, in a sum equal to the contract price for the faithful performance of the contract."

ORS 279.526, in turn, provided a mechanism for recovery against a bond for a public improvement contract. That statute provided, in part:

"(1)   A person claiming to have supplied labor or materials for the prosecution of the work provided for in the contract, including any person having direct contractual relationship with the contractor furnishing the bond or direct contractual relationship with any subcontractor * * * has a right of action on the contractor's bond * * * as provided for in ORS 279.029 only if:

"(a)   The person or the assignee of the person has not been paid in full; and

"(b)   The person gives written notice of claim, as prescribed in ORS 279.528, to the contractor and the state agency, or the clerk or auditor of the public body that let the contract if the public body is other than a state agency."

To satisfy its obligation under ORS 279.029, Vander Kley obtained a labor and materials bond from Acstar for its work on the North Marion School District Project. The dispute between plaintiffs and Acstar centers on whether penalty wages, which are assessed against an employer who fails to pay wages when due, are recoverable in an action on the labor and materials bond under ORS 279.526(1). According to plaintiffs, whether they "were 'paid in full' [under ORS 279.526(1)] depends on whether the penalty wages they earned were wages that could be collected against the bond." Acstar counters that penalty wages are available only under ORS 652.150 and only as a remedy against an *employer*;

thus, penalty wages may not be sought against a surety in an action on a bond.

The question whether penalty wages are available in an action on a bond is a matter of statutory construction. Specifically, the issue turns on whether, in an action under ORS 279.526 to recover on a labor and materials bond, the legislature intended to provide for recovery of penalty wages that may have accrued against an employer pursuant to ORS 652.150.

As an initial matter, the text of ORS 279.526(1) does not refer to wage claims asserted under ORS chapter 652. Nor do any provisions of ORS chapter 652 explicitly provide for an action on a bond under ORS chapter 279. Nonetheless, plaintiffs argue that the two schemes—ORS chapter 279 and ORS chapter 652—must be read together and harmonized because both "contain provisions to protect workers and neither of them restrict their protections to exclude protection under other employment laws." Plaintiffs' argument, however, misses the point. The question is not whether ORS chapter 279 *precludes* protection under other employment laws; the question is whether plaintiffs are authorized *under ORS 279.526* to recover penalty wages against a surety.[7]

For plaintiffs to recover penalty wages in an action on a bond under ORS 279.526, they must demonstrate some entitlement to penalty wages *under that statute*. Yet plaintiffs do not analyze the text of ORS 279.526 or otherwise explain how penalty wages may be recovered under the language of that statute. Based on the text of the statute, penalty wages are recoverable under ORS 279.526(1) only if they constitute payment for "labor or materials for the prosecution of the work provided for in the contract." Plaintiffs do not offer any argument on this point and, given the nature of penalty wages as discussed below, we conclude that penalty

---

[7] Plaintiffs make the related argument that the legislature would not have intended to provide fewer remedies to employees on public improvement projects than on any other projects. However, an action on a bond under ORS 279.526 actually provided a mechanism for recovery *in addition to* any claim that an employee would ordinarily have against his or her employer. Thus, we are not persuaded that ORS chapter 279, by giving employees *additional* security that they will be paid on public improvement projects by means of a required bond, somehow treats employees on public improvement projects less favorably than other employees.

wages cannot be considered payment for labor supplied for the prosecution of work provided for in the contract.

Penalty wages are a product of statute and arise under ORS 652.150, which provides, in part:

"[I]f an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, * * * then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced."

Penalty wages, as we noted in *Wyatt v. Body Imaging, P.C.*, 163 Or App 526, 989 P2d 36 (1999), may be considered a continuation of "wages" for purposes of the enforcement provisions of ORS chapter 652; however, penalty wages are not "earned" in the sense that they compensate an employee for work actually performed. In fact, by definition, they accrue *after* the worker's employment "ceases" simply as a penalty against the employer. For that reason, penalty wages, as a matter of law, cannot be payment for labor supplied for the prosecution of the work in a public contract and cannot be recovered against a surety under ORS 279.526 under such a theory.[8]

In support of their argument that penalty wages are recoverable against a surety, plaintiffs rely on *Chvatal v. United States National Bank of Oregon*, 285 Or 11, 589 P2d 726 (1979). Specifically, plaintiffs rely on a footnote in that opinion that states:

"Defendant argues that ORS 652.200 only governs procedure for the enforcement of ORS 652.140, which defines when wages are due and payable after an employee quits or is discharged, and ORS 652.150, which provides that unpaid wages continue to accrue as a penalty for willful

---

[8] The statutory context of ORS 279.526 also suggests that it does not contemplate, as a recoverable item, statutory remedies under ORS chapter 652. Where the legislature intended for statutory damages for wage violations to be recovered in an action on a bond, it has so provided. *See, e.g.,* ORS 279.356(2) (providing that actions to enforce liability to workers for unpaid minimum wages, including an additional amount equal to unpaid wages as liquidated damages, may be enforced as actions on a bond under ORS 279.536). *Cf. Butler v. United Pacific Ins. Co.,* 265 Or 473, 509 P2d 1184 (1973) (sureties are not liable for punitive damages absent legislative intent to the contrary).

failure to pay them when due. But the provisions requiring payment are written in the passive voice, *arguably applicable to anyone who may be liable for the unpaid wages.* Only the final provision of ORS 652.150 gives a defense against the penalty on the ground of financial inability specifically to the employer."

*Id.* at 17 n 1 (emphasis added). According to plaintiffs, that language suggests that "a person liable to pay wages on behalf of the employer must also pay penalty wages accrued under ORS 652.150." Plaintiffs read too much into the footnote. First, the footnote states only that someone other than an employer "arguably" could be liable for penalty wages in an action under ORS 652.150; it does establish as a matter of law that penalty wages are recoverable in an action on a bond under ORS 279.526. Second, to the extent that the footnote in *Chvatal* raises the possibility that parties other than an employer could be liable for penalty wages under ORS 652.150, the Supreme Court appears to have subsequently foreclosed such a possibility. In *Taylor v. Werner Enterprises, Inc.*, 329 Or 461, 467, 988 P2d 384 (1999), the court held that ORS 652.150 applies only to employers and that the definition of "employer" in ORS 652.310(1) controls.[9] The Supreme Court's interpretation of ORS 652.150 in *Taylor* becomes "part of the statute as if it were written into the law at the time of its enactment." *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995). Thus, the footnote in *Chvatal* does not persuade us that penalty wages are recoverable from a surety in an action on a bond under ORS 279.526.[10]

---

[9] ORS 652.310(1) defines "employer" as "any person who in this state, directly or through an agent, engages personal services of one or more employees and includes any successor to the business of any employer * * *." Plaintiffs do not appear to argue on appeal that Acstar is directly liable as an employer under ORS 652.150, but defendants devote a considerable portion of their brief to that issue. In any event, Acstar was not plaintiffs' employer. Acstar did not engage the personal services of any of the plaintiffs nor did it succeed Vander Kley's business; Acstar's only role was to ensure payment for labor and materials that Vander Kley was unable to pay. Thus, Acstar could not be held directly liable for penalty wages as an employer under ORS 652.150(1).

[10] We note that, although the entitlement to statutory penalties in an action on a labor and materials bond appears to be a matter of first impression in Oregon, courts in other jurisdictions have addressed the issue. *See generally* Jay M. Zitter, Annotation, *Liability of Surety on Private Bond for Statutory Penalties Imposed for Nonpayment*, 19 ALR 5th 900 (2006) (stating that courts typically have held that, because bonds exist to ensure that persons who supply labor and materials actually

■    We next turn to whether defendants can be held liable for liquidated damages pursuant to ORS 279.356. In granting defendants' motion for summary judgment on that issue, the trial court concluded that, because plaintiffs' notice was deficient, plaintiffs were not entitled to liquidated damages. However, as previously stated, because we conclude that plaintiffs are not entitled to liquidated damages under ORS 279.356, we do not address the sufficiency of that notice.

Plaintiffs essentially argue that, because they were not paid until after the date that they were entitled to payment, defendants violated the prevailing wage requirement in ORS 279.350. Therefore, plaintiffs argue, they are entitled to liquidated damages pursuant to ORS 279.356. Defendants respond that the prevailing wage requirement is not violated by late payment. Instead, according to defendants, it can be violated only by tendering checks paying plaintiffs less than the prevailing wage rate. Thus, they argue, because the checks that Acstar tendered to plaintiffs reflected the prevailing wage rate, there can be no action for liquidated damages. We agree with defendants.

ORS 279.356 provided:

"Any contractor or subcontractor or contractor's or subcontractor's surety *who violates the provisions of ORS 279.350* shall be liable to the workers affected in the amount of their unpaid minimum wages, including all fringe benefits * * *, and in an additional amount equal to said unpaid wages as liquidated damages."

(Emphasis added.) ORS 279.356 specifically applied to violations of ORS 279.350, which requires that workers be paid "not less than the prevailing rate of wage."

In *Hurger v. Hyatt Lake Resort, Inc.*, 170 Or App 320, 13 P3d 123 (2000), *rev den*, 331 Or 583 (2001), we addressed an argument similar to the one plaintiffs make here. The plaintiff in *Hurger* argued that the employer's late payment of his wages upon termination violated ORS 652.140 and entitled him to penalty wages pursuant to ORS 652.150 and a second penalty because the late payment also violated the

get paid, and not to secure any additional payment, sureties are not liable for treble damages or other statutory penalties).

minimum wage statutes under ORS 653.055. Construing those statutes, we rejected the plaintiff's argument. We explained that ORS 652.140 has a distinct purpose of establishing brief time limits, "which are peculiarly relevant to the prompt payment of employees at the end of an employment relationship[,]" and that the minimum wage statutes afforded a "considerably greater temporal latitude for making wage payments[.]" *Id.* at 325. Ultimately, we concluded that

"[s]tated summarily, plaintiffs offer, and we discern, no convincing reason for concluding that an employer violates the minimum wage statutes by paying an employee an amount that satisfies the minimum wage statutes and at a time that satisfies those statutes, simply because the minimum wage happens to be includable in a payment that is due at an earlier time * * *."

*Id.* at 326.

Although here we are not interpreting the minimum wage statutes under ORS 653.055, that same reasoning from *Hurger* nonetheless applies. The prevailing wage statute, ORS 279.350, essentially sets a minimum wage for public improvement projects and serves the same purpose as the minimum wage statutes in ORS chapter 653. That purpose is fulfilled when the employer, or in this case its surety, tenders a check to the employee reflecting the minimum or the prevailing wage rate. Plaintiffs do not claim that the paychecks they received paid them less than the prevailing wage rate; they argue only that the delay in payment violated the prevailing wage rate. We disagree. Because there was no prevailing wage rate violation under ORS 279.350, plaintiffs are not entitled to liquidated damages under ORS 279.356.

■ Finally, we address the trial court's grant of summary judgment to Vander Kley on the basis of his discharge in bankruptcy under 11 USC section 524(a), which voids any judgment that determines the personal liability of a discharged debtor and operates as an injunction against the continuation of an action to collect or recover a debt as the personal liability of the debtor.

In granting summary judgment in favor of Vander Kley, the trial court explained:

"I am going to deny Plaintiffs' Motion for Summary Judgment against Mr. Vander Kle[y]. I do make the finding that Mr. Vander Kle[y] has indeed, as everyone agrees, been discharged from any personal liability in this action or any other action by dint of the order entered in the bankruptcy proceedings. *I am granting Vander Kle[y]'s Motion for Summary Judgment against the plaintiffs for the same reason; that is, that he indeed has been discharged.* I am satisfied as well, and I suppose I should put this on the record, that the argument that is being made here by the plaintiffs is circular; that is to say the defendant Vander Kle[y] is entitled to assert an inability to pay as an affirmative defense for claims against him for nonpayment of wages. And Mr. Vander Kle[y] does not have access to the bond itself for the reason that it is not his property. Moreover, for the reason that it is not triggered as an obligation until there is an inability to pay. And therefore attempting to use the proceeds themselves as evidence that he had an ability to pay strikes me as defeating the purpose of the provisions requiring bonding companies to pay."

(Emphasis added.)

In their opening brief, plaintiffs advance the same argument that the trial court explicitly rejected: that, because he had bonds available, Vander Kley "cannot argue that he has an inability to pay under ORS 652.150." In their reply brief, plaintiffs' argument shifts. They argue that they are permitted to proceed against Vander Kley despite the bankruptcy discharge because they do not intend to enforce a money judgment against him; rather, they contend, they are proceeding against Vander Kley only for purposes of collecting against "Defendant sureties." Plaintiffs rely upon *In re Beeney*, 142 BR 360 (BAP 9th Cir 1992), and *In re Munoz*, 287 BR 546 (BAP 9th Cir 2002), in support of their argument.

In *Beeney*, the appellant, a victim in a car accident, attempted to pursue litigation against the debtor, who had been discharged in bankruptcy, "solely to determine the debtor's liability for an auto accident so that [the] appellant could collect damages under the debtor's insurance policy." 142 BR at 360-61. The court explained that 11 USC section 524(e) "makes clear that [an] injunction applies only to the debtor's personal liability and does not inhibit collection efforts against other entities." *Id.* at 362 (emphasis added).

Based on section 524(e) and case law interpreting that section,[11] the court in *Beeney* concluded that, as a matter of law, a creditor is not precluded from pursuing litigation against a bankrupt debtor "so long as [the creditor] does not intend to enforce any judgment against [the debtor] or [the debtor's] property." *Id.* at 363.

In *Munoz*, a creditor moved the bankruptcy court for relief from stay for the limited purpose of obtaining a Workers' Compensation Appeals Board award in an action designed to qualify the creditor for payment by the Uninsured Employers Fund. The bankruptcy court allowed the board action to proceed, holding that section 524(e) "prevents us from construing § 524(a)(2) in a manner that would shield another entity that would be liable to pay if the debtor does not." 287 BR at 555.

The situation at hand is distinguishable from *Beeney* and *Munoz* in that a discharge of Vander Kley's liability does not shield the sureties from liability. Under ORS 279.526, plaintiffs were entitled to proceed directly against the bond— and plaintiffs in fact did so. This is not a scenario, as in *Beeney* and *Munoz* (and the cases on which they rely), in which plaintiffs were required to obtain a judgment of the debtor's personal liability as a precursor to recovery against a third party; they simply were required to prove, as part of their action on the bond, that Vander Kley did not pay them in full for their labor.[12] Accordingly, under these circumstances, the trial court correctly granted Vander Kley's motion for summary judgment on the basis of his discharge in bankruptcy.

Affirmed.

---

[11] The court in *Beeney* relied primarily on the Second Circuit's decision in *Green v. Welsh*, 956 F2d 30 (2d Cir 1992). In *Green*, the court held that section 542 "permits a plaintiff to proceed against a discharged debtor solely to recover from the debtor's insurer. Applied here, this principle permits [the plaintiff] to continue her suit against [the discharged debtors] to establish liability *as a precondition to recovery from the [discharged debtors'] liability insurer.*" *Id.* at 35 (emphasis added).

[12] Moreover, given our resolution of the sureties' liability for penalty wages and liquidated damages, a "liquidation" of the amount of Vander Kley's liability to plaintiffs as to those damages, which are not collectible in an action on the bond, would not help plaintiffs in this action.