Argued and submitted July 29, 2005, award of an enhanced prevailing party fee
reversed and remanded for reconsideration; otherwise affirmed July 5, 2006

NORTH MARION SCHOOL DISTRICT #15,
for the use and benefit of:
Gonzalo Aranda Trejo, William Alan Avery,
Eugene Beebe, Cory Breno, Joe Brockamp,
Ray Cannon, Ronald Cooper, Chuck Craig,
Keith Dossey, Allen Filer, Robin Fisk,
David Flippin, David Gast, Lucas Glenn,
Darrell Gutherie, Basilio Gutierrez,
David Hill, Derek Holcomb, Monte Holcomb,
Jeff Jones, Darren King, Fred Knipe,
Donald Kuhns, John Ledoux, James Manning,
Ignacio Mejia Valencia, Jose Luis Mejia Valencia,
Guy Meyers, Nathan Morris, Tod Mundell,
Steven Nichol, John Partlow, Nemesio Pina-Mondragon,
Jason Portlock, Basilio Rudometkin, Clayton Sabine,
Kirt Siegwald, Alan Sims, Daniel Stephens,
Jerry Tallmon, Dennis Tidwell, Robert Tuttle,
Martin Vandervies, Micah Walter,
Warren Wegleitner, Richard Witbeck and Charles Wolcott,
*Appellants,*

*v.*

ACSTAR INSURANCE CO.;
American Home Assurance Company,
a foreign corporation;
OC America Construction, Inc.,
a foreign corporation;
and Christopher J. Vander Kley,
an individual,
dba Vander Kley & Co.,
*Respondents.*

000605846; A122630

138 P3d 876

Jacqueline L. Koch argued the cause for appellants. With her on the joint briefs were Bailey, Pinney & Associates, J. Dana Pinney, and Koch & Deering.

Darien S. Loiselle argued the cause for respondents Acstar Insurance Co., American Home Assurance Company, and OC America Construction, Inc. With him on the joint brief were Schwabe Williamson & Wyatt, Stoel Rives, and Kenneth P. Childs.

Loren S. Scott argued the cause for respondent Christopher Vander Kley, dba Vander Kley & Co. With him on the brief were Rohn M. Roberts and Arnold, Gallagher, Saydack, Percell, Roberts & Potter, P.C.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Plaintiffs, employees on a public improvement project, appeal supplemental judgments awarding attorney fees to defendants, the general contractor, subcontractor, and their respective sureties on the public improvement project. Plaintiffs argue that the trial court erred in awarding attorney fees to defendants, in failing to require defendants to segregate work performed on fee-generating claims and non-fee-generating claims, in awarding an enhanced prevailing party fee to the subcontractor, and in making the award of attorney fees and the enhanced prevailing party fee to the subcontractor joint and several. For the reasons that follow, we reverse and remand for reconsideration with respect to the award of an enhanced prevailing party fee and otherwise affirm.

The judgment resolving the claims underlying the trial court's attorney fee award was appealed separately. *North Marion Sch. Dist. #15 v. Acstar Ins. Co.*, 205 Or App 484, 136 P3d 42 (2006). In that case, we rejected plaintiffs' appeal and affirmed the trial court's dismissal of their claims. We borrow from that opinion in order to provide background for defendants' attorney fee claims in this case:

"North Marion School District hired defendant OC America Construction, Inc. (OC) to be the general contractor for a public improvement project. OC obtained a labor and materials bond from American Home Assurance Company (AHA). Defendant Vander Kley was one of the subcontractors on the project. Vander Kley obtained two labor and materials bonds from defendant Acstar Insurance Co. (Acstar).

"After work on the project had begun, Vander Kley developed financial difficulties and did not pay his employees on time. In March 2000, OC wrote to Vander Kley demanding that he pay his employees on time. Then, in April 2000, Vander Kley became financially insolvent and could no longer pay his employees. OC informed Acstar of the situation, and Acstar prepared the paychecks for Vander Kley's employees. However, those paychecks were not timely issued. On May 8, 2000, plaintiffs provided notice to defendants of their claims for nonpayment of wages pursuant to ORS 279.528. The notices stated:

" 'Pursuant to ORS 279, notice is hereby given that [named employee] was an employee of Vander Kley & Co., and has a claim for wages for labor performed because he was not paid wages at the prevailing wage rate when those wages were due. Pursuant to ORS 652.140 and ORS 652.150 for, penalty wages because he was not paid such wages when due; and for his attorney fees incurred in an amount to be determined pursuant to ORS 652.200 and 279.365; in addition an amount equal to the unpaid wages as liquidated damages pursuant to ORS 279.356; and interest on all moneys owed; all against the bonds taken from American International Companies and ACSTAR Insurance Company for the work of Facility Improvements with the North Marion School District #15. Such labor was supplied to Vander Kley & Co.'

"Acstar delivered paychecks to plaintiffs on May 25, 2000. After plaintiffs received their paychecks, they filed this action for penalty wages, liquidated damages, and attorney fees. Plaintiffs' complaint contained three claims for relief. The first claim was captioned 'Wage Claim, Statutory Penalty Wages,' and alleged that plaintiffs were entitled to statutory penalty wages pursuant to ORS 652.150. The second claim for relief, captioned 'State Minimum Wage Claim, Civil Penalty,' alleged that 'Defendant Vander Kley & Company was required to pay Plaintiffs at the then prevailing State of Oregon minimum wage rate for all hours worked, when those wages were due,' and that Vander Kley failed to pay plaintiffs' wages when due and that plaintiffs are therefore entitled to a penalty under ORS 653.055. Plaintiffs' third claim for relief, entitled 'ORS 279.356 Liquidated Damages,' alleged that defendants had failed to pay plaintiffs at the prevailing wage rate as required by ORS 279.350 and that plaintiffs were entitled to an amount equal to the unpaid wages as liquidated damages.

"Plaintiffs and defendants each filed motions for summary judgment. The trial court concluded, among other things, that the sureties could not be liable for penalty wages, that plaintiffs failed to comply with the notice provisions of ORS chapter 279, and that plaintiffs' claims against Vander Kley were barred by his discharge in bankruptcy. Accordingly, the trial court granted defendants'

motions for summary judgment on all claims and denied plaintiffs' motion."

205 Or App at 487-89 (footnotes omitted). Following the entry of judgment in favor of defendants, the trial court awarded attorney fees to defendants under ORS 742.061(1).

On appeal, plaintiffs make five assignments of error: (1) that the attorney fee award was improper because the trial court erred in finding for defendants on the underlying claims in the litigation; (2) that the trial court erred in awarding attorney fees to the contractor and the sureties under ORS 742.061(1) because defendants did not make a "tender" within the meaning of the statute; (3) that the trial court erred by not requiring defendants to segregate their fee-generating claims from non-fee-generating claims; (4) that the trial court erred in awarding an enhanced prevailing party fee to Vander Kley as a result of Vander Kley's assertion of bankruptcy as an affirmative defense; and (5) that the trial court erred in making the supplemental judgments to Vander Kley joint and several rather than apportioning them among plaintiffs. Plaintiffs' first assignment of error fails in light of our decision in the appeal concerning the underlying claims. 205 Or App 484. We consider the remaining issues in turn.

In their second assignment of error, plaintiffs argue that the trial court incorrectly awarded attorney fees to defendants under ORS 742.061, the statute governing the award of attorney fees in an action on an insurance policy or contractor's bond. ORS 742.061(1) provides:

"[I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. *If the action is brought upon the bond of a contractor or subcontractor executed and delivered as provided [in the public contracting statutes] or 701.430 and the plaintiff's recovery does not exceed the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed and*

*allowed to the defendant as part of the costs of the action and any appeal thereon.* If in an action brought upon such a bond the surety is allowed attorney fees and costs and the contractor or subcontractor has incurred expenses for attorney fees and costs in defending the action, the attorney fees and costs allowed the surety shall be applied first to reimbursing the contractor or subcontractor for such expenses."

(Emphasis added.)

The trial court concluded that defendants, who had paid $86,134.92 to plaintiffs for wages after plaintiffs made a claim on the bond, made a tender within the meaning of ORS 742.061(1). Alternatively, the trial court held that, in any event, plaintiffs had recovered nothing on the claim against the bond and, therefore, even if defendants had tendered nothing, plaintiffs' recovery did not "exceed the amount of any tender made by the defendant in such action" under the plain language of ORS 742.061(1).

According to plaintiffs, the trial court mischaracterized defendants' payment of $86,134.92 to plaintiffs as a "tender" within the meaning of ORS 742.061. Plaintiffs argue that the payment was "not a tender, but payment of past due wages on defendants' own terms." One issue raised by plaintiffs' argument is whether a tender by a surety under the statute must be made after the action is filed. However, for the reasons expressed below, that is an issue we need not reach in this case.

In response to plaintiffs' arguments, defendants argue that the $86,134.92 payment made before plaintiffs filed their action was exactly what the statute contemplates as a "tender." Defendants also dispute the underlying premise of plaintiffs' argument: that a surety must make a "tender" before it is entitled to recover attorney fees under ORS 742.061(1). Defendants contend that, even if they did not make a tender to settle the action brought by plaintiffs, they are still entitled to attorney fees under the statute. We agree with defendants' latter argument for the reasons that follow.

Whether the statute requires a tender as the predicate to an award of attorney fees presents a question of statutory interpretation about what the legislature intended

when it used the phrase "and the plaintiff's recovery does not exceed the amount of any tender made by the defendant[.]" In construing ORS 742.061(1), we use the template established in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and examine first the text and context of the statute and, if necessary, its legislative history and other aids to statutory construction. As to the meaning of the words used in a statute, we attribute to the legislature meanings based on the ordinary understanding of the words unless the legislature has specifically defined a statutory term or the context of the statute requires a specialized meaning. *Id.* We also utilize rules of construction that bear directly on the text of the statute, such as the rule that the same terms generally have the same meanings throughout a statute. *Id.* Also, where the Supreme Court has interpreted a term in a statute, that interpretation becomes part of the statute as if it were written into the statute at the time of its enactment. *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995).

With those rules of interpretation in mind, we consider first the text of ORS 742.061(1). Initially, we observe that the statute governs attorney fee awards that involve at least two different groups of defendants: The first sentence of the statute applies to insurers who insure insureds for various types of risk; the second sentence applies to a subset of those insurers—sureties who covenant to perform obligations under performance bonds purchased by contractors and subcontractors. Nonetheless, the phrase "amount of any tender" appears in both the first and second sentences of the statute. In the first sentence, it pertains to the award of attorney fees to a successful plaintiff; in the second sentence, it refers to the award of attorney fees to a successful surety. Presumably, the phrase has the same meaning in both sentences; that is, it requires the application of a comparison between "the plaintiff's recovery" and "the amount of any tender." *See PGE*, 317 Or at 611 (same terms have same meaning throughout a statute).

■ The particular question before us is whether, by using the phrase "amount of any tender," the legislature intended to require a surety to first make a qualifying "tender" within the meaning of the statute. For purposes of ORS 742.061(1), "tender" has been construed by the Supreme

Court consistently with the common-law definition of the term. *Butler v. United Pacific Ins. Co.*, 265 Or 473, 479, 509 P2d 1184 (1973). Under the common-law definition, a tender is "an offer of payment that is coupled either with no conditions or only with conditions upon which the tendering party has a right to insist." *Fresk v. Kraemer*, 337 Or 513, 522, 99 P3d 282 (2004).

The word "amount" in the statute refers to what is to be compared pursuant to the statute: the quantity or amount of the plaintiff's recovery and the quantity or amount of the tender. *See Webster's Third New Int'l Dictionary* 72 (unabridged ed 2002) (defining "amount," for relevant purposes, as the "total number or quantity"). It is unclear how, or if at all, the legislature intended to value the number or quantity of a nonexistent tender. One plausible reading of the term "amount" is that, in the absence of some number, the total quantity is simply "zero." In fact, this court has previously endorsed that understanding of the term "amount." *Shisler v. Fireman's Fund Ins. Co.*, 87 Or App 109, 113, 741 P2d 529 (1987). Under that reading, plaintiffs' amount of recovery on their claims is none. Because plaintiffs' recovery does not exceed the amount of any tender (none) made by defendant Acstar, defendants would be entitled to an award of attorney fees. We turn then to the word "any" in the phrase "amount of any tender."

The word "any" does not provide further clarification as to the meaning of the phrase. The word "any" in the statute, when modifying the word "tender," could mean "one or more : not none[.]" *Webster's* at 97. Such an interpretation would be supportive of plaintiffs' argument that a tender by a surety is a prerequisite to the recovery of attorney fees. The word "any," however, can also be used to communicate the scope of the word that it modifies—"to any extent : in any degree : at all[.]" *Id.* If the legislature intended that particular meaning of the word "any," the phrase "the amount of any such tender" would simply connote the comparison required by the statute between the plaintiff's recovery and the amount of tender, if any. Thus, based on the plain text of the statute and the juxtaposition of the first two sentences in the statute, two understandings of the phrase are plausible: The legislature may have intended to require a surety to make a

tender as a prerequisite to the recovery of attorney fees, or the legislature may have intended to allow a surety to recover fees if the plaintiff's recovery does not exceed the amount of a qualifying tender, if any.

We turn next to the context of the statute. As noted above, both the first and second sentences of ORS 742.061 use the phrase "the amount of any tender." Under the first sentence of the statute, a plaintiff is entitled to fees if the plaintiff's recovery exceeds the amount of any tender by the insurer. The Supreme Court has held that, in the absence of a *timely* tender—that is, a tender made within six months of the filing of a proof of loss—a plaintiff can recover attorney fees if the plaintiff obtains recovery in the action. *Dockins v. State Farm Ins. Co.*, 329 Or 20, 985 P2d 796 (1999). The purpose of the first sentence of the statute is "to encourage the settlement of such claims without litigation and to reimburse successful plaintiffs reasonably for moneys expended for attorney fees in suits to enforce insurance contracts." *Chalmers v. Oregon Auto. Ins. Co.*, 263 Or 449, 452, 502 P2d 1378 (1972). Given that purpose, it is not rational to conclude that the legislature would have provided a right to attorney fees against an insurer who tendered less than the amount the plaintiff ultimately recovered, but would not have intended to provide the same right to a plaintiff who prevailed where the insurer made no tender. *See State Highway Com. v. DeLong Corp.*, 9 Or App 550, 585-87, 495 P2d 1215, *cert den*, 411 US 965 (1973) (permitting award of attorney fees to insured under *former* ORS 743.114(1) (1979), *renumbered as* ORS 742.061 (1989), where no tender was made); *see also State v. Claypool*, 145 Or 615, 28 P2d 882 (1934) (permitting award of attorney fees to insured under predecessor to ORS 742.061, Oregon Code, title XLVI, ch 1, § 46-134 (1930), where no tender was made).

Because the legislature used the same phrase in the second sentence of ORS 742.061, it is also plausible to conclude that the legislature did not intend to require a tender under that sentence either. In fact, it can reasonably be inferred from reading the second sentence of the statute together with the first sentence that the legislature intended for the second sentence to provide attorney fees for the "flip

side" of the circumstances identified in the first sentence. That is, if the plaintiff's recovery exceeds a timely tender, if any, the plaintiff recovers fees; if the plaintiff's recovery does not exceed a timely tender, if any, the surety recovers fees.

The text of the amendments to ORS 742.061 is consistent with that understanding of the statute. *See Krieger v. Just*, 319 Or 328, 876 P2d 754 (1994) (context for *PGE* purposes encompasses the broad historical circumstances surrounding a statute's enactment, including prior versions of the same statute). The second and third sentences of ORS 742.061—which pertain specifically to actions on bonds— were added to the statute in 1981. Or Laws 1981, ch 667. Before those additions to the statute, the first and only sentence in the predecessor of ORS 742.061(1) provided for the recovery of attorney fees when settlement was not made within six months from the date of proof of loss and "the plaintiff's recovery exceeds the amount of any tender made by a defendant in such action." *See former* ORS 743.114 (1979), *renumbered as* ORS 742.061 (1989). Nonetheless, the Supreme Court had previously interpreted the statute to govern the award of attorney fees arising out of actions on contractors' bonds. *Hillsboro v. Maint. & Const. Serv.*, 269 Or 169, 172, 523 P2d 1036 (1974); *see also State ex rel Town Concrete v. Andersen*, 264 Or 565, 505 P2d 1162 (1973). In other words, it is inferable from the text of the amendments that the intent of the legislature in amending the statute in 1981 was to level the playing field between plaintiffs and sureties with regard to actions on the bonds of contractors and subcontractors. If that was indeed the intent of the legislature, it is unlikely that it would have intended that only sureties that made tenders would be entitled to recover their attorney fees. Such an interpretation would force sureties to make unnecessary tenders under the statute in order to become eligible for an award of attorney fees in the event that they prevailed.

Nonetheless, because neither first level interpretation precludes doubt as to what the legislature intended, we turn to the legislative history in our effort to resolve whether the legislature intended to require a tender in an action on a contractor's or subcontractor's bond before a successful

surety could obtain an award of attorney fees against the plaintiff.[1] A review of the legislative history of the 1981 amendments to ORS 742.061 confirms our understanding derived from a first level analysis. It indicates the following: The proponents of the 1981 amendments to *former* ORS 743.114 were concerned that the statute provided attorney fees to a successful claimant but not a "successful defendant." Testimony, Senate Committee on Business and Consumer Affairs, SB 576, May 28, 1981, Ex C. The proponents pointed out that, in actions on bonds, unlike other types of insurance claims, a contractor must actually reimburse the surety for the costs of defense. Tape Recording, Senate Committee on Business and Consumer Affairs, SB 576, June 5, 1981, Tape 95, Side A (statement of Jack Kalinoski). Drafts of the proposed amendments were aimed at treating defendants and plaintiffs on bond actions equally, and the draft legislation, at one time, referred to the "prevailing party," with the court giving "due consideration to whether any tender was made, its timing and the difference, if any, between the amount of any such tender and the ultimate recovery." Testimony, Senate Committee on Business and Consumer Affairs, SB 576, June 5, 1981, Ex A. However, there were concerns as to how a "prevailing party" would be defined, as one senator expressed the view that a "prevailing party" would be the party recovering anything whatsoever, even if the amount was less than that tendered by the defendant. Tape Recording, Senate Committee on Business and Consumer Affairs, SB 576, June 5, 1981, Tape 96, Side A (statement of Senator Walter Brown). The final legislation did not refer to a "prevailing party," but was similarly protective of the interests of defendants. It kept the language of *former* ORS 743.114 as it existed—providing a right to attorney fees to a claimant whose recovery exceeds any tender—and added a sentence providing a surety with the right to attorney fees in the opposite situation—where the claimant's recovery *does not* exceed any such tender.

---

[1] In addition to the template that we apply in our analysis, we note that the legislature has provided in ORS 174.020(3) that, in discerning its intent, we "shall give the weight to the legislative history that the court considers to be appropriate."

■ Thus, the legislative history reflects an intent to create a scheme that protects a surety in a bond claim where the claimant does not prevail; the history of the amendments does not suggest that a surety was required to make a tender—even on a meritless claim—simply to protect its entitlement to attorney fees. After considering the text of the statute as understood in its context and the underlying history of the 1981 amendments, we conclude that the legislature did not intend for ORS 742.061(1) to require a tender on an action against a contractor's or subcontractor's bond before a successful defendant is entitled to attorney fees. Accordingly, we reject plaintiffs' second assignment of error.

In their third assignment of error, plaintiffs argue that the trial court erred in not requiring defendants to segregate work performed with respect to plaintiffs' claims on the bond under ORS chapter 279 (fee-generating claims) and work performed with respect to plaintiffs' claims under ORS chapter 652 (non-fee-generating claims). According to plaintiffs, defendants were not entitled to attorney fees under ORS chapter 652, and, therefore, the trial court erred in awarding fees to defendants for work performed on those claims.

■ The trial court found that the work performed by defendants was common to claims under ORS chapter 279 and ORS chapter 652 and awarded attorney fees to defendants without requiring them to segregate work performed on the various claims. We agree with the trial court's determination that, given the pleadings and arguments made by plaintiffs, the claims under ORS chapter 652 and ORS chapter 279 presented common issues. Accordingly, the trial court did not err in failing to require defendants to segregate work performed with respect to those claims. *See Bennett v. Baugh,* 164 Or App 243, 247, 990 P2d 917 (1999), *rev den,* 330 Or 252 (2000) ("When a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, the trial court must apportion attorney fees, except when there are issues common to both claims.").

In their fourth assignment of error, plaintiffs argue that the trial court erred in awarding an enhanced prevailing

party fee to Vander Kley based on ORS 20.190.[2] ORS 20.190(3) provides, in part:

> "[T]he court may award to the prevailing party up to an additional $5,000 as a prevailing party fee. The court shall consider the following factors in making an award under the provisions of this subsection[.]"

The subsection next lists eight factors that the court is to consider. As discussed below, the trial court relied on five of those factors.

■,■ The trial court explained its award of an enhanced prevailing party fee to Vander Kley as follows:

> "The decision by the plaintiffs to pursue the bankrupt Vander Kley, notwithstanding multiple requests and warnings by Vander Kley's counsel that the debts had been discharged, warrants the award of an enhanced prevailing party fee in the amount of $5000.00. This court finds that the purpose of the bankruptcy laws is to prevent precisely this type of litigation. While the plaintiffs' counsel repeatedly acknowledged that they had no intent to enforce the judgment, the bankrupt could hardly rest on such assurances. The protection afforded by the bankruptcy laws is meaningless if litigation can nevertheless be pursued with impunity. It is appropriate, therefore, under the provisions of ORS 20.190(3) and the factors in 20.190(3)(b), (c), (d), (e), and (f) to award such a fee."

Under ORS 20.190(3), a trial court may award an enhanced prevailing party fee after considering the appropriate factors. "Thus, the ultimate decision to award—or not to award—[the enhanced prevailing party] fee is discretionary, and we review that decision accordingly." *Shumake v. Foshee*, 197 Or App 255, 260-61, 105 P3d 919 (2005).

---

[2] Plaintiffs refer throughout their briefing to the trial court's award of an enhanced prevailing party fee and attorney fees based on the fact that Vander Kley was in bankruptcy. However, the trial court's order indicates that the award of fees to Vander Kley was based on ORS 742.061(1), not ORS 20.190 and ORS 20.094. It is unclear whether Vander Kley would have been entitled to an award of fees under ORS 742.061(1), which contemplates an award of fees to a surety for attorney fees expended by a contractor. However, plaintiffs do not assign error to the award of attorney fees to Vander Kley on that basis, and we do not address that issue.

Although the ultimate decision to award an enhanced prevailing party fee is discretionary, some of the factors underlying the decision involve findings of fact concerning the conduct of the parties during the course of the proceedings. *Id.* at 261. "We will review those findings as we usually review findings of fact in nonequity civil proceedings—that is, for any evidence." *Id.* Other factors underlying the decision to award an enhanced prevailing party fee involve determinations of law, such as those factors involving whether the parties' conduct or positions were "objectively reasonable." *Id.* We review a trial court's conclusions with respect to those factors as a matter of law. *Id.*

Although the trial court stated that it relied on ORS 20.190(3)(b) to (f), it is clear that the trial court's decision to award fees rested, at least in part, on a legal conclusion: that the pursuit of a money judgment against Vander Kley was not objectively reasonable in light of his bankruptcy. ORS 20.190(3)(b). Generally, a party lacks an objectively reasonable basis for a position only if that position is " 'entirely devoid of legal or factual support at the time it was made.' " *Dimeo v. Gesik*, 195 Or App 362, 371, 98 P3d 397 (2004), *adh'd to as modified on recons*, 197 Or App 560, 106 P3d 697 (2005) (quoting *Mattiza v. Foster*, 311 Or 1, 8, 803 P2d 723 (1990)). Although we ultimately concluded that plaintiffs' claims against Vander Kley were barred by Vander Kley's discharge, 205 Or App at 497, plaintiffs' position—*i.e.*, that they could pursue a claim against Vander Kley so long as they represented that they would not enforce a money judgment—was not devoid of legal support. Plaintiffs had obtained a stay from the bankruptcy court to continue the litigation against plaintiffs. Bankruptcy courts have, in some circumstances, allowed plaintiffs to proceed against bankrupt debtors where the plaintiffs represented that they would not enforce a money judgment. *See, e.g.*, *Green v. Welsh*, 956 F2d 30 (2d Cir 1992); *In re Munoz*, 287 BR 546 (BAP 9th Cir 2002); *In re Beeney*, 142 BR 360 (BAP 9th Cir 1992). Considering those decisions, plaintiffs' position, though ultimately incorrect, had legal support. Accordingly, we reverse the judgment awarding an enhanced prevailing party fee to

Vander Kley and remand for the trial court to reconsider its award in light of our opinion.[3]

■ In their final assignment of error, plaintiffs argue that the trial court "erred in making its award joint and several between the 47 plaintiffs."[4] We review the trial court's decision apportioning fees for an abuse of discretion. *Vertopoulos v. Siskiyou Silicates, Inc.*, 177 Or App 597, 605, 34 P3d 704 (2001) (citing *R & C Ranch, LLC v. Kunde*, 177 Or App 304, 316-17, 33 P3d 1011 (2001)).

In its findings and conclusions regarding attorney fees, the trial court stated that "[t]he attorney fee award is properly allocated proportionally among these plaintiffs." However, when the supplemental judgments in favor of Vander Kley were entered, the judgments were against plaintiffs "and each of them, jointly and severally[.]" After the first of two supplemental judgments against Vander Kley was entered, plaintiffs moved for relief from the judgment on the ground that it was inconsistent with the trial court's earlier findings and conclusions. During the hearing on that motion, the trial court explained that, despite the language in the findings and conclusions, it was not the court's intention to make the judgment proportionate, because in "all of the issues and defenses, the claims were identical irrespective of the number of plaintiffs."

---

[3] We remand to the trial court to reconsider the award of an enhanced prevailing party fee because, given the discretionary nature of the ultimate decision, "it is not for us to second-guess the impact of our ruling on the subsidiary determinations on the ultimate decision to award or not to award the penalty unless, on the facts of a particular case, our ruling means that there is only one legally permissible decision." *Shumake*, 197 Or App at 261-62. *See also Mantia v. Hanson*, 190 Or App 412, 431, 79 P3d 404 (2003) ("Because the trial court exercised its discretion under ORS 20.190(3) based, in part, on a criterion that we have now determined was inapposite, we remand for the trial court to again exercise its discretion in light of our determination[.]").

[4] Although plaintiffs do not distinguish between the various supplemental judgments entered against plaintiffs for purposes of this assignment of error, we treat the assignment as pertaining only to the supplemental judgments against Vander Kley. Plaintiffs' statement of their preservation of error refers only to statements made at a hearing on plaintiffs' motion for relief from the first of two supplemental judgments awarding costs and fees to Vander Kley. Moreover, the language in the judgment to which plaintiffs object—that the judgment is against plaintiffs "and each of them, jointly and severally"—does not appear in the supplemental judgments awarding costs and fees to the other defendants.

■     The issues in this case were identical for all plaintiffs. In that circumstance, it was legally permissible for the trial court to allocate liability for the attorney fee award to each plaintiff, jointly and severally. *See Computer Concepts, Inc. v. Brandt*, 141 Or App 275, 279, 918 P2d 430 (1996) (award of attorney fees on appeal payable jointly and severally by the defendants deemed appropriate); *Hancock v. Suzanne Properties, Inc.*, 63 Or App 809, 812, 666 P2d 857 (1983) (joint and several award of attorney fees serves the "manifest purpose of ORCP 68 C(6) [of] the avoidance of multiple taxation of attorney fees, costs and disbursements"). Thus, we reject plaintiffs' fifth assignment of error.

To summarize, plaintiffs' first assignment of error fails because we earlier affirmed the trial court judgment on the underlying claims. We reject plaintiffs' second assignment of error on the basis that ORS 742.061(1) does not require a tender. We reject plaintiffs' third assignment because the claims presented common issues. We reverse and remand on plaintiffs' fourth assignment of error because the trial court, based on the reasons it relied on, erred in imposing an enhanced prevailing party award. Finally, we reject plaintiffs' fifth assignment of error that the trial court erred in making plaintiffs jointly and severally liable on the judgments in favor of Vander Kley.

Award of an enhanced prevailing party fee reversed and remanded for reconsideration; otherwise affirmed.