Argued and submitted January 10, decision of Court of Appeals affirmed;
judgment of circuit court affirmed October 11, 2007

NORTH MARION SCHOOL DISTRICT #15,
for the use and benefit of
Gonzalo Aranda Trejo, William Alan Avery,
Eugene Beebe, Cory Breno, Joe Brockamp,
Ray Cannon, Ronald Cooper, Chuck Craig,
Keith Dossey, Allen Filer, Robin Fisk,
David Flippin, David Gast, Lucas Glenn,
Darrell Gutherie, Basilio Gutierrez,
David Hill, Derek Holcomb, Monte Holcomb,
Jeff Jones, Darren King, Fred Knipe,
Donald Kuhns, John Ledoux, James Manning,
Ignacio Mejia Valencia, Jose Luis Mejia Valencia,
Guy Meyers, Nathan Morris, Tod Mundell,
Steven Nichol, John Partlow, Nemesio Pina-Mondragon,
Jason Portlock, Basilio Rudometkin, Clayton Sabine,
Kirt Siegwald, Alan Sims, Daniel Stephens,
Jerry Tallmon, Dennis Tidwell, Robert Tuttle,
Martin Vandervies, Micah Walter,
Warren Wegleitner, Richard Witbeck,
and Charles Wolcott,
*Petitioners on Review,*

*v.*

ACSTAR INSURANCE CO.,
a foreign corporation;
American Home Assurance Company,
a foreign corporation;
OC America Construction, Inc.,
a foreign corporation;
and Christopher J. Vander Kley,
an individual, d.b.a. Vander Kley & Co.,
*Respondents on Review.*

(CC 0006-05846; CA A119438; SC S53662)

169 P3d 1224

Jacqueline L. Koch argued the cause for petitioners on review. With her on the joint briefs were Koch & Deering, and J. Dana Pinney, and Bailey, Pinney & Associates, Portland.

Darien S. Loiselle argued the cause for respondents on review Acstar Insurance Co., America Home Assurance Company, and OC American Construction, Inc. With him on the brief were Schwabe, Williamson & Wyatt, P.C., Kelly T. Hagan, and Sara Kobak, Portland.

No appearance on behalf of respondent Christopher J. Vander Kley.

Erika L. Hadlock, Assistant Attorney General, argued the cause on behalf of *amicus curiae*, Bureau of Labor and Industries. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General, Salem.

LINDER, J.

Durham, J., specially concurred and filed an opinion. Walters, J., dissented and filed an opinion.

## LINDER, J.

Plaintiffs, former workers on a public works project, filed this action to recover statutory penalty wages and liquidated damages from a surety who issued construction bonds to plaintiffs' employer, a subcontractor on the project. The dispute arose when plaintiffs' employer became financially unable to meet its payroll and terminated plaintiffs' employment without paying plaintiffs' final wages on the date that those wages were due. Within one month, the employer's surety, Acstar Insurance Co. (Acstar), paid plaintiffs the amounts that the employer failed to pay them. In their actions, however, plaintiffs alleged that, because their final wages were paid late, they also were entitled to penalty wages and liquidated damages from the surety. On the parties' cross motions for summary judgment, the trial court concluded that the surety was not statutorily liable in an action on the bond for either penalty wages or liquidated damages based on the late payment of wages. The trial court therefore granted defendant Acstar's motion, denied plaintiffs' motion, and entered judgment accordingly.[1] The Court of Appeals affirmed. *North Marion Sch. Dist. #15 v. Acstar Ins. Co.*, 205 Or App 484, 136 P3d 42 (2006).

Plaintiffs petitioned for this court's review and, in support of their petition, the Commissioner of the Bureau of Labor and Industries (BOLI) filed an *amicus* brief urging that the Court of Appeals resolved the liquidated damages issue incorrectly. We granted review to address: (1) whether a surety is liable for penalty wages under ORS 652.150 in an action on a construction bond pursuant to ORS 279.526; and (2) whether the late payment of wages violates the prevailing wage rate statute, ORS 279.350(1), thereby entitling plaintiffs to liquidated damages from the surety under ORS 279.356(1).[2] As we explain below, we affirm the decision of

---

[1] Acstar is not the only defendant in the case. Defendants also include the general contractor (OC America Construction, Inc.) and its surety (American Home Assurance Company), as well as the subcontractor (Vander Kley) who employed plaintiffs. The judgment resolved all claims as to all parties. In the Court of Appeals, plaintiffs did not challenge the trial court's rulings that absolved the general contractor and its surety of liability. As noted, Vander Kley is insolvent. Thus, the surety issues before the Court of Appeals concerned only defendant Acstar's liability. On review, the issues before this court are likewise limited. We therefore discuss the procedural and historical facts only as they pertain to defendant Acstar.

[2] In 2003, the legislature repealed ORS chapter 279. Or Laws 2003, ch 794, § 332. That repeal became effective March 1, 2005, and applies only to public

the Court of Appeals and the judgment of the trial court as to both issues.

## I.  FACTS AND PROCEDURAL HISTORY

We take the facts from the Court of Appeals opinion and the record. North Marion School District #15 hired defendant OC America Construction, Inc. (OC), to be the general contractor for the North Marion School District Facility Improvements, a public improvement project. OC hired defendant Vander Kley as a subcontractor on the project; Vander Kley, in turn, employed plaintiffs. As required by ORS 279.029,[3] both OC and Vander Kley obtained construction bonds to cover their contractual obligations on the project. Vander Kley obtained his bonds from defendant Acstar. After work on the project commenced, Vander Kley developed financial difficulties and began to issue late paychecks to his employees. In March 2000, OC demanded in writing that Vander Kley pay his employees timely. On April 27, 2000, Vander Kley became financially insolvent and could not pay his employees at all. Vander Kley advised OC of his financial distress and terminated his employees. Vander Kley was unable to pay them their final wages, which were due the next day. OC informed Acstar of Vander Kley's situation so that Acstar would pay Vander Kley's final payroll from the bond. Acstar attempted to determine the correct amount owed to each employee by obtaining the certified payroll statements that Vander Kley had filed with North Marion School District.[4] Acstar did not immediately receive those statements, however.

---

contracts first advertised or entered into on or after that date. *Id.* at §§ 336, 337. Consequently, we refer throughout this opinion to the 1999 versions of the provisions of ORS chapter 279, which were in effect at the time of the relevant events in this action.

[3] ORS 279.029(4) required a contractor on a public improvement project to be bonded and provided, in part:

"The successful bidder shall:

"* * * * *

"(b)  If the contract is for a public improvement, execute and deliver to the public contracting agency a good and sufficient bond, to be approved by the public contracting agency, in a sum equal to the contract price for the faithful performance of the contract."

[4] *See generally* ORS 279.354(1) (requiring subcontractor to file weekly certified statements with the public contracting agency setting out, among other

Meanwhile, on May 8, 2000, a little over a week after their employment terminated, plaintiffs—47 of Vander Kley's former employees—sent notices to Acstar, pursuant to ORS 279.528, of their claims for nonpayment of wages. The notices identified the employees by name, but did not describe the work performed or the amount of wages sought. Acstar's counsel immediately asked plaintiffs' counsel for that information, but plaintiffs' counsel did not provide it, asserting instead that Acstar, as the surety, was responsible for determining the amount of wages due to each employee. On May 19, 2000, Acstar succeeded in obtaining copies of Vander Kley's certified payroll statements. About a week later, on May 25, 2000, Acstar delivered paychecks to each plaintiff. Plaintiffs do not dispute that Acstar paid them all wages that Vander Kley owed as of their last payday, nor do they dispute that those wages were calculated at the correct wage rates.

After plaintiffs received their paychecks, they filed this action on the contractor's bond pursuant to ORS 279.536. They alleged that they were entitled to penalty wages under ORS 652.150 for late payment of their final wages. They also sought liquidated damages under ORS 279.356(1), claiming that the late payment of their wages violated the prevailing wage rate statute.[5] At trial, plaintiffs and defendant Acstar each filed motions for summary judgment. As pertinent to the issues on review, the trial court concluded that (1) Acstar, as a surety for Vander Kley, was not liable for penalty wages under ORS 652.150 for Vander Kley's late payment of wages; and (2) plaintiffs failed to comply with the notice provisions of ORS 279.528 and therefore could not pursue an action on Acstar's bond for liquidated damages under ORS 279.356(1). Accordingly, the trial court granted Acstar's motion for summary judgment and denied plaintiffs' motion. Plaintiffs subsequently appealed.

The Court of Appeals affirmed the trial court's judgment. On the penalty wages issue, the Court of Appeals agreed with the trial court that Acstar, as a surety on a public

---

information, a worker's correct classification, rate of pay, number of hours worked, deductions from pay, and actual wages paid).

[5] The relevant parts of those statutes are set out below.

works project, was not liable for penalty wages under ORS 652.150. On the liquidated damages issue, the Court of Appeals did not decide the adequacy of plaintiffs' notice of claim. It instead concluded, more fundamentally, that late payment of wages does not violate the prevailing wage rate statute and therefore does not give rise to liability under ORS 279.356(1). On review, plaintiffs take issue with both of those legal conclusions on the Court of Appeals' part.[6] BOLI, in its *amicus* capacity, sides with plaintiffs only on the issue of plaintiffs' entitlement to liquidated damages under ORS 279.356(1) based on the late payment of their final wages.

## II. DISCUSSION

### A. *Legal overview*

To sketch the landscape for our discussion, we begin by briefly outlining the three statutory schemes involved. The first of the three—Oregon's wage and hour statutes, ORS 652.010 to 652.570[7]—governs the relationship between employers and employees on matters such as the maximum number of working hours, discriminatory wage rates, and when wages must be paid. With only a few exceptions, the wage and hour statutes apply to all employees in Oregon working at a fixed rate of compensation and give them common rights and remedies with regard to timely payment of wages.[8] Pertinent to this case are the provisions that require an employer to pay a worker on a regular or statutorily specified payday. In general, ORS 652.120(1) provides that

---

[6] The Court of Appeals also held that plaintiffs' claims against their employer, Vander Kley, were barred by his discharge in bankruptcy. *See* 11 USC § 524(a) (voiding any judgment that determines the personal liability of a discharged debtor and enjoining any further proceedings to make the debtor personally liable for the debt). On review, plaintiffs do not challenge that holding. Defendant Acstar, however, renews its challenges to the adequacy of plaintiffs' notice of their claim as an additional or alternative ground for affirming the Court of Appeals on the liquidated damages issue. As did the Court of Appeals, we decline to reach that question given our resolution of the liability issues.

[7] The provisions of ORS chapter 652 at issue here have been amended since the relevant events in this action occurred. The operative text of the current provisions, however, is substantively the same as the 1999 version in effect at the time of those events. For that reason, we refer to the current versions of the provisions of ORS chapter 652.

[8] Employees of the federal government are among the few who are not covered by the time-of-payment provisions of ORS chapter 652. *See* ORS 652.210(2) (exempting the federal government from definition of employer).

"[e]very employer shall establish and maintain a regular payday, at which date all employees shall be paid the wages due and owing to them." For discharged employees, such as plaintiffs, ORS 652.140(1) requires an employer to pay all earned and unpaid wages within one business day after termination from employment. If a discharged employee is not timely paid final wages, the employer is subject to a penalty in the form of the continued accrual of the employee's daily wages until those wages are paid. ORS 652.150(1).

The second of the three statutory schemes—Oregon's prevailing wage rate statutes, ORS 279.348 to 279.380—is modeled on the federal Davis-Bacon Act.[9] Unlike the wage and hour provisions of ORS chapter 652, the prevailing wage rate statutes apply only to a narrow class of employees—workers on government construction (*i.e.*, public works) projects. Under ORS 279.350(1), contractors (and their subcontractors) who successfully bid for public works projects are obligated to pay their workers what is termed the "prevailing rate of wage," which ensures that those workers "are paid at least the prevailing wage in the area in which the project is carried out for the workers' respective crafts." *Stockton v. Silco Construction Co.*, 319 Or 365, 368, 877 P2d 71 (1994). If a public works contractor pays a worker less than the applicable prevailing rate, the contractor is liable to the worker for the unpaid wages, plus liquidated damages of an equal amount. ORS 279.356(1).

The final set of pertinent statutes are those governing bonds for public works projects, which also are a part of ORS chapter 279. ORS 279.526 to 279.542. Unlike the wage and hour laws and the prevailing wage rate laws, those bonding provisions do not exclusively protect workers. They instead protect all suppliers of materials and labor for a public works project by providing them with an alternative source of payment, as would a construction lien for a private project. *See School Dist. No. 1 v. Rushlight & Co.*, 232 Or 341, 348, 375 P2d 411 (1962) (public works bonds provide security

---

[9] 40 USC §§ 3141 to 3148 (formerly 40 USC §§ 276a to 276a-5). A comprehensive discussion of the origins of Oregon's prevailing wage rate statutes and their parallels to the federal act is contained in *Stockton v. Silco Construction Co.*, 319 Or 365, 373-76, 877 P2d 71 (1994).

comparable to that afforded by mechanics' liens on private work). As pertinent to this case, a worker on a public works project who is paid less than the prevailing wage rate can bring an action on the construction bond to enforce liability for the violation. ORS 279.356(2).

B.  *Plaintiffs' claim for penalty wages*

We begin with the issue that arises under the Oregon wage and hour scheme, *i.e.*, whether Acstar, as Vander Kley's surety, is liable on the construction bond for what are termed "penalty wages" under ORS 652.150(1). As described, ORS 652.140(1) requires an employer to pay "all wages earned and unpaid" to a discharged employee within one business day after the employee's last day of work. If the employer fails to pay those final wages on that date, and if the failure is willful, a penalty arises under ORS 652.150(1):

> "[I]f an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 * * *, then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced. * * *"

The penalty for late payment accrues for a maximum of "30 days from the due date." ORS 652.150(1)(a). An employer may avoid liability for penalty wages by showing "financial inability to pay the wages or compensation at the time the wages or compensation accrued." ORS 652.150(5). If the employer fails to pay the final earned wages or any penalty wages that accrued for their late payment, the employee has a statutory "wage claim" against the employer for those amounts. *See* ORS 652.320(7) ("wage claim" is a claim against the employer for "any wages, compensation, damages or civil penalties provided by law to employees in connection with a claim for unpaid wages").[10]

---

[10] In addition to the penalty wages provision of ORS 652.150, the wage and hour statutes of ORS chapter 652 contain several other enforcement mechanisms for an employer's time-of-payment obligations. *See, e.g.*, ORS 652.125 (when an employer is "failing to pay wages within five days" of a regular payday, commissioner of BOLI may require the employer to post a bond to secure future payment); ORS 652.330(1)(a) (authorizing commissioner to investigate and attempt to equitably resolve employee wage claims); ORS 652.330(1)(b), (c) (employee can assign

In this case, plaintiffs' employer, Vander Kley, fell into financial distress and, for months, had not been paying plaintiffs on time. Eventually, he was unable to pay them at all. At that point, Vander Kley discharged plaintiffs and Acstar, as Vander Kley's surety, stepped in to pay plaintiffs their final wages. By then, the wages already were overdue under ORS 652.140(1). Acstar paid plaintiffs their final wages once it determined the amount owed to each one, which delayed the payments past the due date by about a month. Acstar did not, however, pay plaintiffs penalty wages based on the untimeliness of their final paychecks.

Plaintiffs have two arguments for why they are entitled to recover penalty wages from Acstar. First, they argue that Acstar is liable under ORS 279.526(1), which provides the mechanism for recovery against a contractor's surety bond on a public works project:

> "A person claiming to have supplied labor or materials for the prosecution of the work provided for in the contract, including any person having direct contractual relationship with the contractor furnishing the bond or direct contractual relationship with any subcontractor * * * has a right of action on the contractor's bond [or other security] as provided for in ORS 279.029 only if:

> "(a)   The person or the assignee of the person has not been paid in full; and

> "(b)   The person gives written notice of claim, as prescribed in ORS 279.528, to the contractor and the state agency, if the contract is with a state agency, or the clerk or auditor of the public body that let the contract if the public body is other than a state agency."

Relying on paragraph (a) of subsection (1), plaintiffs argue that they have not been "paid in full" because the compensation legally owed to them includes penalty wages under ORS

---

wage claim to commissioner, who may pursue civil and criminal actions for wage law violations); ORS 652.340 (if employees are not being paid for their services, commissioner may require employer to post a bond in such amount as is "reasonable and adequate in the circumstances" to ensure employees are paid "in accordance with the laws of Oregon"); ORS 652.409 (when employer is unable to pay wages, the worker can be paid back wages from the Wage Security Fund); ORS 652.900(1) (commissioner can assess a civil penalty of up to $1,000 for each failure to timely pay termination wages).

652.150. In effect, plaintiffs urge that being "paid in full" implicitly encompasses statutory penalties in connection with unpaid earned wages, as well as unpaid wages themselves.

In resolving that issue, our decision in *Butler v. United Pacific Ins.Co.*, 265 Or 473, 509 P2d 1184 (1973), is instructive. *Butler* involved whether a surety on a statutorily required automobile dealer's bond was liable for punitive damages assessed against the dealer in a civil action. This court began its analysis with the common-law principle that a surety ordinarily is not liable for penalties imposed by law on a person covered by the bond. *Id.* at 474-75 (citing with approval *Restatement (First) of Security* § 181 (1941)).[11] The rationale for that limitation is that the purpose of a penalty— *i.e.*, to deter disfavored conduct—is ill-served when the person who engaged in the conduct does not have to pay the penalty. *Id.* at 477. Punitive damages, the court observed, fall within that rationale because they are imposed as a penalty to deter tortious conduct, rather than as compensation. *Id.* As the court acknowledged, the legislature can change a surety's liability to encompass penalties such as punitive damages. *Id.* at 475. But the court was unwilling to impose liability on a surety for penalty amounts unless the legislature had, in clear and unambiguous terms, so provided by statute. *Id.* at 475-78. The statute at issue in *Butler* permitted a plaintiff to recover from the bond "any loss or damage" suffered due to an automobile dealer's fraud; it did not expressly or in other clear terms authorize recovery of punitive damages. *Id.* The court therefore held that the surety was not liable for those amounts. *Id.* at 478.[12]

---

[11] Although *Butler* involved punitive damages, the general limitation on surety liability that it endorsed from the *Restatement* is not a special rule for punitive damages. The limitation applies to any statutory liability designed to serve as a penalty rather than as compensation for losses arising directly from the breach of the duties secured by the bond. *See Restatement (First)* at § 181 (giving illustrations and citing cases). Consequently, treble damages and similar forms of penalties for nonpayment of wages or violation of prevailing wage laws generally are not recoverable from a construction bond. *See* 19 ALR 5th 900 (1994) (collecting representative cases and so observing).

[12] The general principle of suretyship, as originally stated in the 1941 *Restatement (First)*, now expressly applies to statutorily required bonds. Under the *Restatement (Third) of Suretyship & Guaranty* § 73 (1996), "[w]hen the secondary obligation is a legally mandated bond, that obligation does not include any penalties imposed on the principal obligor for failure to fulfill the underlying obligation

■■   As was true of the punitive damages in *Butler*, "penalty wages" under ORS 652.150(1) are the kind of penalty for which a surety ordinarily is not liable. They accrue for an employer's willful failure to pay a terminated employee earned wages on time. ORS 652.150(1). Penalty wages are designed "to spur an employer to the payment of wages when they are due" and are punitive, not compensatory, in nature. *Nordling v. Johnston*, 205 Or 315, 326, 283 P2d 994 (1955).[13] *Id.* Under *Butler*, then, Acstar is liable on its bond for penalty wages only if the legislature unambiguously has provided for sureties on public works projects to be liable for penalties arising from the contractors' breach of their payment obligations.

ORS 279.526(1) does not so provide. The statute declares that a person "claiming to have supplied labor * * * for the prosecution of the work provided for in the contract" has a "right of action on the contractor's bond [or other security] as provided for in ORS 279.029[.]" In the paragraphs that immediately follow, the statute imposes two conditions on bringing an action on the bond: (1) the plaintiff must not have been "paid in full" and (2) the plaintiff must have given

---

unless the secondary obligation so provides." The commentary to the *Restatement* explains:

> "*a. General principle.* When a secondary obligor issues a legally mandated bond, the secondary obligor assumes liability for losses resulting from the failure of the principal obligor to fulfill its underlying obligation. Sometimes the law also imposes a penalty on the principal obligor for failure to fulfill that obligation. Such a penalty, however, is typically considered punitive rather than compensatory. * * *
>
> "If, of course, the law requiring the issuance of the legally mandated bond provides that any secondary obligation entered into in furtherance of the law is deemed to provide for the penalty, that penalty is covered by the secondary obligation."

*Id.* at § 73 comment a. The comment cites *Butler* as exemplary of the principle. *Id.*

[13] Plaintiffs attempt to argue that the penalty wages are compensation for work actually performed. The text of the statute is to the contrary. *See* ORS 652.150(1) (penalty wages accrue *after* "employment ceases," for "willful" late payment, and are expressly characterized as a "penalty" for the failure to pay the employee's wages or compensation when due). So is our prior case law. *Nordling*, 205 Or at 326; *State ex rel Nilsen v. Ore. Motor Ass'n*, 248 Or 133, 136, 432 P2d 512 (1967) (under ORS 652.140(1) and ORS 652.150(1), the obligation to pay penalty wages arises for late payment of "wages," which are all earned compensation that the employer owes for the employee's personal services).

written "notice of claim." ORS 279.526(1)(a), (b). In context, "paid in full" and "notice of claim" refer to the claim for labor supplied on a public works project—*i.e.*, a claim for earned wages.[14] The statute does not expand the surety's liability to include penalties arising from the principal's breach of its payment obligations, and it certainly does not do so in the express and unambiguous terms that *Butler* requires. We therefore hold that penalty wages under ORS 652.150(1) are not recoverable in an action on a public works construction bond under ORS 279.526(1).

Plaintiffs' second theory for holding Acstar liable for penalty wages is that Acstar is *directly* liable for penalty wages under ORS 652.150(1) as Vander Kley's agent, apart from its liability as a surety. As both the trial court and the Court of Appeals reasoned, however, our analysis in *Taylor v. Werner Enterprises, Inc.*, 329 Or 461, 988 P2d 384 (1999), forecloses that argument.

In *Taylor*, this court held that ORS 652.150(1) imposes liability for penalty wages on a worker's "employer" and that, for purposes of that statute, the definition of employer in ORS 652.310(1) applies. 329 Or at 467. Under that definition, employer means "any person who in this state, directly or through an agent, engages personal services of one or more employees[.]" ORS 652.310(1). Thus, liability for penalty wages extends only to a person who "engages" an employee's personal services. Even assuming that Acstar was in some sense Vander Kley's agent for purposes of paying his former employees (a question that we do not decide), Acstar did not engage plaintiffs' personal services. Acstar therefore was not their "employer" for purposes of ORS 652.150(1) and has no direct liability for penalty wages under the statute.

---

[14] That understanding is reinforced by the cross-reference to ORS 279.029. That statute requires a contractor on a public works project to obtain "a good and sufficient bond * * * in a sum equal to the *contract price for the faithful performance of the contract.*" ORS 279.029(4)(b) (emphasis added). Under general suretyship principles, bond language guaranteeing "faithful performance" of the principal's underlying obligations generally imposes liability on the surety for losses due to the principal's defaults, not for penalties that the law may impose for the defaults. *Restatement (First)* at § 181 comment a.

## C. *Plaintiffs' claim for liquidated damages*

The second issue for our resolution is whether plaintiffs are entitled to recover liquidated damages under the prevailing wage rate statutes for Vander Kley's late payment of wages. Unlike the penalty wages issue previously discussed, the liquidated damages issue does not turn on whether those damages can be recovered in an action against the surety on a contractor's bond. ORS 279.356, which provides the remedy for violation of the prevailing wage rate requirement of ORS 279.350, expressly provides that they can be:

> "(1) Any contractor or subcontractor or contractor's or subcontractor's surety who violates the provisions of ORS 279.350 shall be liable to the workers affected in the amount of their unpaid minimum wages, * * * and in an additional amount equal to said unpaid wages as liquidated damages.

> "(2) Actions to enforce liability to workers under subsection (1) of this section may be brought as actions on contractors' bonds as provided for in ORS 279.536."

Significantly, the statute expressly imposes liability for liquidated damages only for a "violat[ion of] the provisions of ORS 279.350," the prevailing wage rate statute. As already described, Acstar paid plaintiffs at the statutorily mandated prevailing rates of wage, but delivered their paychecks weeks after the date on which Vander Kley owed them under ORS 652.140. Plaintiffs' entitlement to liquidated damages in their action on the bond therefore depends on whether *late* payment of wages *at the statutorily mandated rate* of wage is, in law, a failure to pay at the statutorily mandated rate and, therefore is a violation of ORS 279.350.

Our starting point is the text of subsection (1) of ORS 279.350, which is the source of a contractor's obligation to pay prevailing wage rates on public works projects. That subsection states, in part:

> "The hourly rate of wage to be paid by any contractor or subcontractor to workers upon all public works shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality where such labor is performed."

Under that provision, a public works contractor must pay workers on the project an "hourly rate" of wage that is "not less than the prevailing rate of wage" for an hour's work in the local area where the work is to be performed. The term "prevailing rate of wage" means "the rate of hourly wage, including all fringe benefits * * *, paid in the locality to the majority of workers employed on projects of similar character in the same trade or occupation[.]" ORS 279.348(1). Thus, by its terms, the obligation that ORS 279.350(1) creates is the obligation to pay wages at a particular *hourly rate*. The statute does not direct *when* wages must be paid.

The statute's singular focus—on the hourly rate of wages, not on when payment is made—is confirmed by the remainder of subsection (1). Immediately after the sentence specifying that the hourly rate of wage "to be paid" shall "be not less than the prevailing rate of wage," the statute specifies what a contractor must do to discharge that obligation:

> "The obligation of a contractor or subcontractor to pay the prevailing rate of wage may be discharged by making the payments in cash, by [providing statutorily-approved fringe benefit contributions], or any combination thereof, where the aggregate of any such payments, contributions and costs is not less than the prevailing rate of wage."

ORS 279.350(1). That provision, too, is expressly directed only to the *amount* of wage that must be paid, not the timing of the payment. The text of ORS 279.350(1) is straightforward and unambiguous: a contractor on a public works project is obligated to pay its employees no less than a statutorily dictated minimum hourly rate; if the contractor does so, that obligation is satisfied. The other subsections of ORS 279.350 reinforce that conclusion. Their terms, too, are directed—pervasively and consistently—to the amount of the wage rate obligation, not when wages must be paid.[15]

---

[15] *See* ORS 279.350(2) (once a contract for a public works project is executed, a contractor may not challenge "the amount" of the prevailing rate of wage in any legal proceeding); ORS 279.350(3) (it is not a defense in any legal proceeding that the correct prevailing rate of wage "is less than the amount" required by the specifications for the public contract); ORS 279.350(4) (public works contractors must post the "prevailing wage rates" for each project in a "conspicuous" place; no provision requiring contractor to post date on which wages must be paid); ORS 279.350(5) (employer must post notice describing fringe benefits owed as part of

Finally, the same is true of the remedies provided in ORS 279.356(1) for a violation of ORS 279.350. They also turn only on whether the contractor paid wages at the statutorily mandated rate, not on whether the contractor paid that rate at a particular time. Specifically, a violation of ORS 279.350 results in liability in the "amount" of a worker's "unpaid minimum wages" together with liquidated damages in an equal measure. ORS 279.356(1). In contrast to the penalty under ORS 652.150(1) for late payment of termination wages, the remedy for violating the prevailing wage rate requirement is not based on, or affected by, the length of time that the minimum amount of wages were unpaid. The relevant statutes—ORS 279.350(1), describing the prevailing wage rate obligation, and ORS 279.356(1), describing liability for violating that obligation—reflect a consistent purpose to enforce the mandated hourly wage *rate*, not to independently enforce whatever obligation the contractor has to pay wages timely.

The wage rate obligation imposed by ORS 279.350(1) therefore is satisfied when the contractor, or in this case its surety, tenders payment to the employees based on a wage rate that is not less than the statutorily mandated minimum. Conversely, if the contractor tenders wages at less than the prevailing wage rate, regardless of whether the payment is timely or untimely, the contractor violates the prevailing wage rate obligation. The contractor then incurs liability for liquidated damages and the worker may recover those liquidated damages in an action on the bond, as ORS 279.356(2) expressly provides. That does not mean that contractors on public works projects have no obligation to pay their workers within or at a specified time. They do. The obligation arises from the wage and hour provisions of ORS chapter 652, which, as already discussed, give employees of public works contractors the same remedies, on the same terms, as they give to Oregon workers generally. The liquidated damages that plaintiffs seek under ORS 279.356(1) expressly arise

---

contractor's prevailing wage obligation); ORS 279.350(6) (subject to specified exceptions, no portion of prevailing rate of wage can be paid by person other than the contractor); ORS 279.350(7) (no person may take any action that circumvents payment of the prevailing rate of wage, including "reducing an employee's regular rate of pay" in a way that would offset the prevailing wage rate).

only from a violation of the prevailing wage rate requirement of ORS 279.350(1). The legislature did not tie that remedy to any statute that imposes a time-of-payment obligation on employers generally or on public works contractors in particular.[16]

BOLI concedes that ORS 279.350 does not expressly impose a time-of-payment obligation on public works contractors. BOLI urges, however, that "[o]ther statutes provide context establishing that workers on public-works contracts are entitled to receive the prevailing wage on their regular paydays." BOLI points to the provisions in ORS chapter 279 that require employers to maintain regular records of the payroll and that permit the commissioner to inspect those records. *See* ORS 279.354 (requiring weekly certification of wage rate); ORS 279.355 (inspection of payroll records). BOLI urges that there would be "little reason" to mandate the maintenance of weekly payroll records if the legislature did not intend to require regular payment.

BOLI's argument reads too much into those statutes. Those provisions implement the commissioner's general authority to "gather facts and information necessary to determine *if* the prevailing rate of wage is actually being paid." ORS 279.355(1) (emphasis added). To aid the commissioner in that task, ORS 279.354(1) requires every contractor on a public works project to file weekly statements under oath "certifying the hourly rate of wage paid each worker" on the project and "further certifying that no worker employed upon such public work has been paid less than the prevailing rate of wage" specified in the contract. The contractor is not required to certify that the wages were paid timely. As BOLI acknowledges in its brief, the regular pay records that the

---

[16] ORS 279.312(1)(a) directs public works contracts to include a clause that the contractor must "[m]ake payment promptly, as due, to all persons supplying to such contractor labor or material" for the project. In turn, ORS 279.314 identifies the remedies to be contractually specified for a contractor's failure, neglect, or refusal to promptly pay a claim for labor or materials. *See* ORS 279.314(1) (contract must provide that public contracting agency may pay "claim for labor" and charge the amount paid against funds owed to the contractor); ORS 279.314(2) (contract must, in limited circumstances, obligate contractor to pay interest on amounts not paid promptly). Those remedies do not include liquidated damages, nor do they cross-reference ORS 279.356, which provides for liquidated damages for violating the prevailing wage rate requirement.

commissioner is authorized to inspect are incidents of an employer's obligation under ORS 652.120 to establish regular paydays for its employees. The fact that the legislature assumed the existence of regular payroll records for purposes of the commissioner's authority to determine "if" the prevailing wage rate is being paid implies no obligation, separate from or independent of the obligations imposed by ORS chapter 652, to pay the employees at a particular time. Said another way, determining that wages *were paid* is necessary to determine *how much* was paid, but determining the *timeliness* of the payment is not.[17]

Using a different line of reasoning than that offered by plaintiffs or BOLI, the dissent comes to a like conclusion: "a contractor *violates* the prevailing wage statute, and wages are *unpaid*, when a contractor fails to pay its workers the prevailing wage on the date that wage is due, *viz.*: the statutorily required payday." 343 Or at 330 (Walters, J., dissenting) (emphases in original). To arrive at that formulation, the dissent conflates the several discrete statutes involved and, in the process, rewrites them.

The requirement that "[e]very employer shall establish and maintain a regular payday, at which date all employees shall be paid the wages due and owing to them," arises under ORS 652.120(1). The requirement that "[t]he hourly rate of wage to be paid by any contractor or subcontractor to workers upon all public works shall be not less than the prevailing rate of wage" is in ORS 279.350(1). Finally, and significantly, the term "unpaid"—which is central to the dissent's analysis—is in ORS 279.356(1), which describes the contractor's *liability* for failing to pay the prevailing rate of wage: "Any contractor * * * who violates the provisions of

---

[17] Beyond relying on those statutes, BOLI's argument for a contrary interpretation of ORS 279.350 is policy-based. BOLI asserts that, if late payment of prevailing wages is not deemed a violation of ORS 279.350, then public works contractors could delay payment of wages indefinitely, which would run afoul of the goal of providing workers on public works contracts with economic security in the form of a fair wage. BOLI's arguments disregard that the same set of statutes that creates the obligation to pay on a particular date or within a particular time of discharge also creates remedies to enforce compliance with those obligations. As we have discussed, Oregon workers in general are entitled to the time-of-payment protections of ORS chapter 652. Workers on public works contracts share those rights and remedies in common with other workers.

ORS 279.350 shall be liable to the workers affected *in the amount of their unpaid minimum wages*[.]" (Emphasis added.) The dissent acknowledges, as it must, that those statutes reside in separate chapters of the ORS, but urges that their "obligations are interdependent" and that they "work hand in glove" to require the contractor to pay the prevailing wage on payday, otherwise the contractor "violates the prevailing wage statute and must pay the penalty set forth in ORS 279.356." 343 Or at 332 (Walters, J., dissenting).

There lies the heart of our disagreement with the dissent. The fact that the statutes are complementary and work together does not mean that this court can mix and match the obligations and remedies that they contain. A contractor's statutory obligation to pay wages on a particular day is independent of the statutory obligation to compensate workers at not less than the prevailing hourly wage rate. The legislature could repeal either obligation without affecting the other. The legislature was entitled to—and did—create different remedies and liabilities for those legally distinct and independent obligations. Our analysis gives effect to the legislature's policy choice to treat the failure to pay wages timely as a different problem than paying too low an hourly rate of wage. The dissent's analysis does not.

The dissent is wrong in asserting that "ORS 279.356 provides the sole remedy" for a contractor's failure to pay wages on the dates due under ORS chapter 652. *See* 343 Or at 332 (Walters, J., dissenting). As the dissent later concedes, but only by way of footnote, ORS 652.150 contains a substantial penalty provision for an employer that does not timely pay termination wages—which are the only wages involved in this case. *Id.* at 332 n 3. As to the obligation to pay wages on a regular payday, ORS chapter 652 does, in fact, contain provisions to enforce that obligation, as described earlier in this opinion. 343 Or at 313-14 n 10. To be sure, the legislature did not provide for automatic economic penalties any time an employer, for any reason, does not pay its employees on the regular paydate. One of the primary ways that obligation is enforced is through the commissioner's discretion to require the employer to post a special bond in an amount as is "reasonable and adequate in the circumstances." ORS 652.340(1). If the employer does not post the bond, it is up to

a court to enforce the obligation if "reasonably necessary or appropriate to secure the prompt payment of the wages." ORS 652.340(3). As the statutory scheme stands, the regular payday obligation is not unbending. If, for example, a computer glitch, a fire, an earthquake, a repeat of the 1996 flooding disasters through the Willamette Valley, or other equally sympathetic circumstance causes the employer to issue paychecks after the regular paydate, no penalty or other harsh economic consequence would follow. The dissent's analysis, however, would nullify the latitude that the legislature built into the statutory scheme.

In an effort to defend its approach, the dissent resorts to federal law and draws on federal court interpretations of the Fair Labor Standards Act's (FLSA) "prompt payment" requirement for the federal minimum wage. *See* 343 Or at 334-37 (Walters, J., dissenting). Fundamentally, however, FLSA is not the correct federal law analog. The Davis-Bacon Act, on which Oregon's and numerous other state and local prevailing wage rate provisions are modeled, is the proper federal act to consider.[18] The dissent does not cite—nor does research disclose—so much as one reported decision holding that a *late* wage payment at the *statutorily mandated hourly wage rate* violates any jurisdiction's prevailing wage rate law.[19]

---

[18] As many as 40 states have adopted "little Davis-Bacon Acts" of their own and numerous local jurisdictions have adopted "micro Davis-Bacon Acts" providing prevailing wage rate guarantees as well. *See* Lisa Morowitz, *Government Contracts, Social Legislation, and Prevailing Woes: Enforcing the Davis Bacon Act*, 9 In Pub Interest 29, 30, 30 n 5 (1989) (describing prevalence of state and local prevailing wage rate provisions).

[19] In relying on federal court interpretations of FLSA, the dissent observes that the liquidated damages remedy provided by ORS 279.356(1) is worded "virtually identical[ly]" to that of the FLSA, and that the Davis-Bacon Act contains no similar remedy. *See* 343 Or at 335-36, 337 (Walters, J., dissenting). That much is true. *See Universities Research Assn. v. Coutu*, 450 US 754, 776, 782, 101 S Ct 1451, 67 L Ed 2d 662 (1981) (Davis-Bacon Act gives worker an action against contractor or construction bond for unpaid back wages; 1932 amendment imposing additional penalties for wage rate violation was passed by Congress but vetoed by the President). The dissent's observation begs the question, however. The issue here is not what remedy arises for a violation of the prevailing wage rate obligation imposed by ORS 279.350. The issue is: what is the nature of that *obligation*? The Davis-Bacon Act, not FLSA, is the federal act on which the substantive prevailing wage rate *obligation* was modeled.

Even if FLSA were a correct analog, the dissent's reliance on it is misplaced. Federal courts have implied a time-of-payment obligation under FLSA because Congress left that gap for them to fill. *See, e.g., Biggs v. Wilson,* 1 F3d 1537, 1539-41 (9th Cir 1993) (identifying express provisions of FLSA that would be ineffective if no time-of-payment requirement were implied) and 1544-46 (Trott, J., dissenting) (agreeing that Congress, through its silence, left the courts to imply a time-of-payment requirement, but disagreeing that any delay beyond when wages are legally owed, however slight or for whatever reason, triggers a violation of FLSA).[20] The same is not true of our statutory scheme. The legislature filled the gap expressly, by creating both time-of-payment obligations and express rights and liabilities that arise from an employer's failure to comply with those obligations in ORS chapter 652. This court has no license to *imply* different or further rights and liabilities where the legislature has fashioned them expressly. *See generally Stockton,* 319 Or at 376 (the remedial nature of the prevailing wage rate statutes does not give this court authority to read into the statutes a remedy that the legislature did not intend to create).[21]

We therefore hold that the late payment of the full amount of wages owed at the prevailing wage rate does not violate the prevailing wage rate statute, ORS 279.350(1). In this case, it is undisputed that Acstar paid plaintiffs at the

---

[20] Contrary to the dissent's interpretation of Oregon's prevailing wage rate law, a FLSA violation is triggered by a failure to pay within a reasonable time, not a failure to pay on a regular payday. *See, e.g., Rogers v. City of Troy, New York,* 148 F3d 52, 56-58 (2d Cir 1998) (prompt payment requirement under FLSA is not tied to employer's obligation to tender wages on payday, but instead depends on whether employer has unreasonably delayed making payment, given the objective circumstances); *see also* 29 CFR § 778.106 (2007) (prompt payment requirement for overtime is not tied to agreed payday, but instead is satisfied if employer pays overtime as soon as practicable; employer may delay for a period reasonably necessary to compute and arrange for payment of the amount due). The Ninth Circuit's decision in *Biggs* appears to be the only federal case holding that the FLSA "prompt payment" obligation requires wages to be paid on payday, regardless of why the employer tendered them late. 1 F3d at 1539-41. *Biggs* thus appears to be an isolated precedent that no other federal court has followed.

[21] The dissent's discussion of the interplay between the statute guaranteeing a regular payday (ORS 652.120) and the state minimum wage laws (ORS 653.025 and ORS 653.055) strays particularly far from the legal issue that this case presents. *See* 343 Or at 333 n 4, 337 n 7 (Walters, J., dissenting). None of those statutes is involved in this case. The interplay—if any—between them has not been examined or decided by this court, and any discussion of them would be and is *dictum.*

statutorily mandated prevailing wage rates. Consequently, the amount that plaintiffs were paid did not violate the prevailing wage rate statute and plaintiffs were not entitled to liquidated damages under ORS 279.356(1), as both the Court of Appeals and the trial court concluded.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed.

**DURHAM, J.**, specially concurring.

I concur in the majority's conclusion that defendant Acstar Insurance Co. (Acstar), a surety, is not liable for penalty wages under ORS 652.150 in an action to secure relief under a construction bond under ORS 279.526 (1999).[1] I also concur, although for a different reason, with the majority's refusal to allow plaintiffs to recover liquidated damages from defendant Acstar under ORS 279.526.

ORS 279.526 provides, in part:

"(1)    A person claiming to have supplied labor or materials for the prosecution of the work provided for in the contract, including any person having direct contractual relationship with the contractor furnishing the bond or direct contractual relationship with any subcontractor, or an assignee of such person, or a person claiming moneys due the State Accident Insurance Fund Corporation, the State Department of Employment Trust Fund or the Department of Revenue in connection with the performance of the contract, has a right of action on the contractor's bond, cashier's check or certified check as provided for in ORS 279.029 only if:

"(a)    The person or the assignee of the person has not been paid in full; and

"(b)    The person gives written notice of claim, as prescribed in ORS 279.528, to the contractor and the state agency, if the contract is with a state agency, or the clerk or auditor of the public body that let the contract if the public body is other than a state agency."

---

[1] Like the majority, I refer to the 1999 versions of the pertinent statutes in ORS chapter 279.

Paragraphs (1)(a) and (b) of that statute establish separate preconditions for the right of action on a contractor's bond described in subsection (1). The majority decides that plaintiff's action fails under paragraph (1)(a), because plaintiffs are not persons who have "not been paid in full." According to the majority, the statutory phrase "paid in full" imposes no obligation to pay wages on time; it requires only the payment of the correct *amount* of wage (here, the prevailing wage) regardless of the lateness of that wage payment. The dissent challenges that opinion, asserting that the phrase "paid in full" incorporates a duty to pay the required wage on the payday established under ORS 652.120(1).

In my view, plaintiff's action under ORS 279.525(1) fails because plaintiffs failed to satisfy the notice of claim requirement in paragraph (1)(b). That provision requires plaintiffs to give a written notice "as prescribed in ORS 279.528, to the contractor * * *." ORS 279.528(3) provides:

"The notice shall be in writing substantially as follows:

"To (here insert the name of the contractor and the name of the state agency or public body):

"Notice hereby is given that the undersigned (here insert the name of the claimant) has a claim for (here insert a brief description of the labor or materials performed or furnished and the person by whom performed or furnished; if the claim is for other than labor or materials, insert a brief description of the claim) in the sum of (here insert the amount) dollars against the bond taken from (here insert the name of the principal and, if known, the surety or sureties upon the bond) for the work of (here insert a brief description of the work concerning which the bond was taken). Such material or labor was supplied to (here insert the name of the contractor or subcontractor).

"_____ (here to be signed)"

The trial court found the following pertinent facts, which are not disputed, regarding plaintiffs' notices:

"The employees filed notices of claim on May 8, 2000. The notices did not contain information required by ORS 279.528, nor were they in substantial compliance with the statute. They did not provide the payroll period, the hours

worked, the pay rates, the total amount due, or the contract on which the work was performed. Acstar Insurance Company received its first notice of bond claim by certified mail from plaintiffs' counsel on or about May 15, 2000. The following day, on May 16, 2000, defendants made an appearance through counsel and by letter requested the information lacking in the notices. Plaintiffs' counsel declined to provide the requested information, asserting that the sureties were responsible for ascertaining the amount due each of the employees."

The statute requires substantial compliance with the notice requirements. *School Dist. No. 1 v. Rushlight & Co.*, 232 Or 341, 375 P2d 411 (1962). The trial court's findings confirm that plaintiffs' notices did not meet that standard. For example, plaintiffs did not comply substantially with the duty to give notice of the amount of the claim merely by disclosing other information that would allow the surety, after conducting its own investigation, to discover the amount of the claim. A notice with a deficiency of that magnitude cannot fulfill the public notification function that the legislature intended. For that reason, the majority's decision to affirm the trial court's judgment is correct.

Because plaintiffs' noncompliance with ORS 279.526(1)(b) is determinative, I do not decide this case, as the majority does, under ORS 279.525(1)(a). However, I shall explain briefly the reason why the dissent has the better of the argument about the scope of the action that ORS 279.526(1) embodies.

Under ORS 279.526(1)(a), plaintiffs may bring an action against a surety if they have "not been paid in full[.]" The phrase, "paid in full," lies at the heart of this case.

The majority focuses on numerous references in other statutes to the *amount* of the required payment, *i.e.*, the prevailing wage. Certainly, a tender of a paycheck in an amount less than the prevailing wage would violate the legal duty to pay the prevailing wage *in full*.

What the majority ignores is that the key phrase "paid in full" has *two* substantive components: "paid" and "in full." By focusing on the second of those components, the majority fails to investigate the meaning of the first.

What did the legislature mean when it required in ORS 279.526(1)(a) that a plaintiff be a person who has not been "paid"? The statute incorporates no specialized definition of the term "paid," but, in construing that term, we must consult the statutory context, *i.e.*, other related statutes that help to explain the legislative intent in using the term "paid."

ORS 652.120(1) provides:

> "Every employer shall establish and maintain a regular payday, at which date all employees shall be *paid* the wages due and owing to them."

(Emphasis added.) That statute applies to every employer and all employees, including those working under a public works contract. By requiring every employer to establish a regular payday and requiring payment of all owed wages on that date, the statute creates a deadline, known to all parties, that clearly identifies whether an employer has fulfilled the duty to *pay* its employees. In common parlance, we can say that employees have "not been paid" if, at the end of the established payday, the employer has failed to tender the compensation due and owing.

ORS 652.120(1) is helpful context regarding the meaning of the term "paid" in ORS 279.526(1)(a). A claim that a person has "not been *paid*" refers to the employer's failure to tender compensation due and owing by the payday deadline established under ORS 652.120(1). A tender of compensation many days or weeks after the payday deadline is a late payment, but not one that complies with the policy regarding timely payment that the legislature has created in ORS 652.120(1). It was that policy that the legislature had in mind when it authorized employees to bring a claim against a surety if they had not been *paid* in full. ORS 652.120(1) makes clear the legislature's intent in using the term "paid" in ORS 279.526(1)(a).

The majority refuses to consider ORS 652.120(1) as helpful context in the construction of ORS 279.526(1)(a). That is an error. By focusing heavily on the meaning of the phrase "in full," the majority concludes that no action lies here because employees received their correct compensation

*eventually*, although several weeks after the designated payday. The majority fails to recognize that, at the end of the designated payday, the employees had "not been paid," under ORS 279.526(1)(a), in *any* amount, let alone "in full."

The Bureau of Labor and Industries has submitted an *amicus curiae* brief explaining the serious administrative problems and inconsistencies that will arise for the Bureau if this court were to accept the interpretation of ORS 279.526(1)(a) that defendant Acstar urges. The majority has agreed with Acstar and has rejected the arguments of the Bureau. It now appears that the Bureau's administrative difficulties will persist until the legislature revisits this topic.

For the reasons explained above, I specially concur in the majority's result.

**WALTERS, J.,** dissenting.

A contractor that *violates* the prevailing wage statute must pay a penalty equal to the *unpaid* wages. ORS 279.356(1).[1] I conclude that a contractor *violates* the prevailing wage statute, and wages are *unpaid*, when a contractor fails to pay its workers the prevailing wage on the date that wage is due, *viz.*: the statutorily required payday. ORS 652.120.[2]

The majority acknowledges that a contractor is required to pay its workers on payday, and that the contractor must pay its workers the prevailing wage on that date. But the majority decides that the contractor does not *violate* the prevailing wage statute, and wages are not *unpaid,* if the contractor fails to perform as required. The majority holds that no penalty can be imposed unless and until the contractor, at some unknown, unpredictable, moving target date, "tenders wages at less than the prevailing wage rate." 343 Or at 320. By that reasoning, a contractor that tenders payment

---

[1] As noted by the majority, the legislature repealed ORS chapter 279 in 2003. 343 Or at 308-09. However, the 1999 versions of the provisions of that chapter were in effect at the time of the relevant events in this action, so I refer to those versions throughout this dissent.

[2] As the majority acknowledges, the prevailing wage statute imposes the same liability on sureties as it imposes on contractors. 343 Or at 318. ORS 279.356(1). I will, for simplicity's sake, use the term contractor in this dissent, but my conclusions apply to contractors' sureties as well.

of a penny less than the amount due, five years after the job is completed, *violates* the prevailing wage statute and the wage becomes *unpaid*. A contractor that never tenders even a penny does not *violate* the statute and the wage never becomes *unpaid*.

Because the express terms of Oregon law and the purposes served by that law dictate a contrary result, I must dissent.

Three Oregon statutes compel the result that I reach. First, the Oregon prevailing wage rate statute, ORS 279.350(1), requires that a public contractor employer pay its employees "not less than the prevailing rate of wage":

> "The hourly rate of wage to be paid by any contractor or subcontractor to workers upon all public works shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality where such labor is performed.* * *"

Second, ORS 652.120(1) requires that all employers pay employees the "wages due and owing to them" on a payday established by the employer:

> "Every employer shall establish and maintain a regular payday, at which date all employees shall be paid the wages due and owing to them."

Third, ORS 279.356(1) makes a contractor who violates the prevailing wage law liable and provides remedies:

> "Any contractor or subcontractor or contractor's or subcontractor's surety who *violates* the provisions of ORS 279.350 shall be liable to the workers affected in the amount of their *unpaid* minimum wages, including all fringe benefits under ORS 279.348(4), and in an additional amount equal to said *unpaid* wages as liquidated damages."

(Emphases added.)

The majority acknowledges the obligations imposed by all three of the foregoing statutes, but asserts, as the sole stated basis for its disagreement with this dissent, that each

obligation is independent of the others and that the legislature has provided "different remedies and liabilities" for violation of each. 343 Or at 323. The majority grounds its ruling on what it says is a legislative "policy choice" to treat the obligations differently. In fact, the payrate and paydate obligations are interdependent and the legislature has provided but one penalty for their violation. As demonstrated by the text, context, and history of enactment of those statutes, the legislature intended that they work hand in glove.

The text of the prevailing wage statute, ORS 279.350, requires that contractors pay their workers "not less than the prevailing rate of wage." ORS 279.350(1). If contractors do not pay their workers on payday, the day the wage is due, they pay them zero, a sum that is certainly "less than the prevailing rate of wage." The contractor therefore violates the prevailing wage statute and must pay the penalty set forth in ORS 279.356.

ORS 279.356 provides the sole remedy for violation of the intertwined obligations to pay the wage due on the date due. There is no separate remedy for a contractor's failure to make payment on payday and the majority does not point to any. The payday statute is ORS 652.120. Chapter 652 contains no remedy for violation of that statute.[3] That does not mean that there is none. The remedy for employees who are entitled to the prevailing wage is found in chapter 279

---

[3] Chapter 652 does contain a statute that requires employers to pay employees not later than the end of the first business day after discharge. ORS 652.140. ORS 652.150 provides a remedy for an employer's failure to pay wages upon discharge. That obligation is separate from and in addition to the obligation to pay current employees on payday. Neither ORS 652.150, nor ORS 279.356 indicate that the duties they impose are mutually exclusive. Courts that have been faced with the argument that the termination penalty is an exclusive remedy for failure to pay wages owed have rejected that argument, although some courts have disallowed a double recovery. *See Davis v. Maxima Integrated Products*, 57 F Supp 2d 1056 (D Or 1999) (separate remedies for failure to pay overtime and failure to pay wages due on termination); *Cornier v. Paul Tulacz, DVM PC*, 176 Or App 245, 30 P3d 1210 (2001) (separate remedies for failure to pay overtime and failure to pay wages due on termination); *Hurger v. Hyatt Lake Resort, Inc.*, 170 Or App 320, 13 P3d 123 (2000) (employee paid on payday so employer only liable for penalty for nonpayment on termination); *Cooper v. Thomason*, 2006 WL 2993376 (D Or 2006) (no separate penalties for same misconduct). No question of duplicate remedies is presented here because the majority holds that plaintiffs do not have a claim against their employer's surety under ORS 652.140.

because the remedy is calculated based on the rate of pay set forth in that statute.[4]

My conclusion that the prevailing wage statute works in tandem with the payday statute is also based on the context in which the prevailing wage statute is found. Chapter 279 is replete with provisions that are built on the assumption that contractors are required to pay the prevailing wage on payday. For instance, ORS 279.528 requires workers to give notice of claims for unpaid wages within 120 days from the date they "last provided labor."[5] If the majority's reasoning were correct, the legislature would have given the workers 120 days from the date that a contractor tenders inadequate payment to give notice. That date could, of course, be years after the date workers "last provided labor." The statute, as written, assumes that a violation occurs on a date certain before, or sometime shortly after, the date on which the worker last provides labor. The statute certainly does not anticipate that a violation will occur at some undetermined time long after payment was due when the contractor happens to tender payment to its workers.

Another statute in chapter 279 that indicates that the legislature intended that the payrate and paydate statutes work synchronously is ORS 279.314(1). That statute provides that every public works contract must contain a clause or condition stating that if the contractor fails, neglects, or refuses to make "prompt" payment, the public contracting agency may pay the wage claim and charge the amount paid against funds owed to the contractor. The contractual right of a public contracting agency to step in and pay wages when a public contractor has failed to pay them

---

[4] The remedy for violation of the payday statute for employees who are not entitled to the prevailing wage is set forth in the minimum wage statutes. ORS 653.025 prohibits an employer from employing an employee at wages lower than statutorily established minimum wages.

[5] ORS 279.528(1) provides, in relevant part:

"The notice of claim required by ORS 279.526 shall be sent by registered or certified mail or hand delivered no later than 120 days after the day the person last provided labor or furnished materials or 120 days after the worker listed in the notice of claim by the Commissioner of the Bureau of Labor and Industries last provided labor."

promptly anticipates that the public contractor is otherwise obliged to do so. In fact, subsection (4) of ORS 279.314 provides that payment by the public agency "shall not relieve the contractor or the contractor's surety from obligation with respect to any unpaid claims." Other examples of provisions that anticipate and supplement the requirement that contractors pay their workers on payday include the following: ORS 279.320 (contractors shall "promptly, as due, make payment" for worker's compensation or employees' medical care); ORS 279.354(1) (requiring contractors to send weekly certified statements of workers' hours and the wages paid in the previous week); ORS 279.355(4) (BOLI may initiate actions against employers to enjoin future failures to pay wages due); ORS 279.350(1) (contractor may discharge its obligation to pay prevailing wages by making payment in cash or by providing benefits).

All of the foregoing add up to what is, in any event, inescapable as a matter of logic: For Oregon's minimum wage laws to work, there must be a time at which a violation occurs. Oregon law provides that that time is the date wages are due: payday. To conclude that a violation of the prevailing wage statute does not occur on a date expressly selected by the Oregon legislature but, instead, occurs (if at all) on some unknown date when payment is tendered, and may never occur if payment is never tendered, requires a jump not found in the text of the statutes themselves. And, the place the majority lands is contradicted by the history of that statute's enactment.

Both Oregon and federal law include two payrate statutes: the minimum wage statute applicable to all employees (ORS 653.025; 29 USC § 206 (a provision of the Fair Labor Standards Act)), and the prevailing wage statute applicable to employees working on public works projects (ORS 279.350; 40 USC § 3142 (a provision of the Davis-Bacon Act)). The prevailing wage statute "is a minimum wage law designed for the benefit of construction workers." *U.S. v. Binghamton Construction Co.*, 347 US 171, 178, 74 S Ct 438, 98 L Ed 594 (1954).

Each of those payrate statutes sets out the minimum *rate* at which employers must pay their employees. None of

those payrate statutes imposes an obligation to make payment at a certain time. But where those statutes impose a penalty for violation of the obligation to pay the required pay *rate,* the penalty is triggered when an employer fails to pay the required wage rate *on time.* Federal law requires an employer that violates the federal minimum wage statute to pay liquidated damages as follows:

"Any employer who *violates* the provisions of section 206 or section 207 of this title [setting forth the minimum wage rate] shall be liable to the employee or employees affected in the amount of their *unpaid* minimum wages, or their unpaid overtime compensation, as the case may be, and in an *additional equal amount as liquidated damages.* \* \* \*"

29 USC § 216(b) (emphases added).

In *Brooklyn Bank v. O'Neil,* 324 US 697, 65 S Ct 895, 89 L Ed 1296 (1945), the United States Supreme Court considered whether an employer was liable for liquidated damages under that statute when it did not pay plaintiff wages owed when due, but tendered the wages, at the correct *rate*, two years *after* they were due. The Supreme Court held, that although the employer paid wages in the correct amount, it violated the minimum wage statute when it did not pay those wages *on time. Id.* at 707. The Supreme Court decided that the liquidated damages were intended to restore damage done by an employer's failure to timely pay the required wage. The Supreme Court stated that the penalty:

"constitutes a Congressional recognition that failure to pay the statutory minimum *on time* may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being."

*Id.* (emphasis added) (quoting 29 USC § 202(a)).

The Oregon legislature enacted its minimum wage statute for public laborers 14 years after the Supreme Court's decision in *O'Neil.* As a remedy for violation of that statute, the legislature adopted a liquidated damages provision virtually identical to the one that Congress imposed for failure

to pay the federal minimum wage. Or Laws 1959, ch 627, § 6. That statute, ORS 279.356(1), provides:

> "Any contractor or subcontractor or contractor's or subcontractor's surety who *violates* the provisions of ORS 279.350 shall be liable to the workers affected in the amount of their *unpaid* minimum wages, including all fringe benefits under ORS 279.348(4), and in an *additional amount equal to said unpaid wages as liquidated damages.*"[6]

(Emphases added.)

By enacting an identical penalty for violation of its prevailing wage statute, we presume that the Oregon legislature intended that the penalty be interpreted as the Supreme Court interpreted the federal penalty, to impose liability for the failure to pay the wages due *on time. See, e.g., State v. Cooper*, 319 Or 162, 167-68, 874 P2d 822 (1994) ("When the Oregon legislature adopts a statute modeled after another jurisdiction, an interpretation of that statute by the highest court of that jurisdiction that was rendered in a case decided before adoption of the statute by Oregon is considered to be the interpretation of the adopted statute that the Oregon legislature intended.").

The majority ignores the Supreme Court's decision in *O'Neil* and contends that "[f]ederal courts have implied a time-of-payment obligation under FLSA because Congress left that gap for them to fill." 343 Or at 324-25. *O'Neil* holds that an employer is liable for a penalty when it does not pay the minimum wage *on time*. The lower federal courts have come to various conclusions about when the federal minimum wage is due. *See* 343 Or at 325 n 20 (citing cases). Some lower federal courts hold that employers must make payment within a reasonable time. The Ninth Circuit holds that

---

[6] The penalty that both the state and federal laws impose for failure to make timely payment of the minimum wage is a sum equal to the amount of the unpaid wage. Congress imposed its penalty without regard to the length of time payment is delayed. When Oregon adopted that penalty for failure to make timely payment of the Oregon prevailing wage, it also imposed the penalty without regard to the length of time payment is delayed. Although the Oregon legislature could have a penalty that increases each day wages remain unpaid, its decision to impose a substantial penalty for failure to pay the wages owed on the date they are due does not indicate any less interest in ensuring prompt payment.

employers must make payment on a contractually required payday. *Biggs v. Wilson*, 1 F3d 1537, 1539-41 (9th Cir 1993). The reason there is a "gap" in federal law, open to judicial interpretation, is that there is no federal statute that requires payment of wages on payday. The Oregon legislature filled the "gap" statutorily by adopting the payday statute. ORS 652.120.

Oregon employers are liable for violating the Oregon prevailing wage statute when they fail to pay the wages in the correct amount "on time." ORS 279.356(1), as interpreted by the Supreme Court in *O'Neil*. "On time" in Oregon means on "payday."[7] ORS 652.120. The majority is just plain wrong when it states that the Oregon legislature filled the gap by creating liabilities for an employer's failure to pay the minimum wage on payday in ORS chapter 652. 343 Or at 325. As I have explained, there is no remedy for violation of ORS 652.120 in chapter 652.

The majority points out that there are no cases in which courts discuss time-of-payment requirements imposed by the Davis-Bacon Act or state acts that mirror it. That is not surprising, because the Davis-Bacon Act, and those modeled precisely on it, do not even include provisions directly requiring employers to pay the prevailing wage, much less requiring that they pay liquidated damages in the event of untimely payment. *See* 40 USC §§ 3141-3148. In requiring public contractors to pay the prevailing wage (ORS 279.350(1)), imposing a penalty for failing to timely pay that wage (ORS 279.356(1)), and enacting its payday statute (ORS 652.120), Oregon created an enforcement mechanism for the prevailing wage statute that is not found in the Davis-Bacon Act. It is the case law relating to that enforcement mechanism that should enlighten us.

The legislature's imposition of a penalty for violation of the prevailing wage statute evidences a true concern for

---

[7] ORS 653.055 provides that any employer who pays an employee less than that minimum wage applicable to employees generally is liable to the employee for the amount of the wages and civil penalties. Courts that have considered the question have held that an employer that fails to pay an employee the minimum wage on payday violates minimum wage statutes and must pay penalties. *Pascoe v. Mentor Graphics Corp.*, 199 F Supp 2d 1034 (D Or 2001); *Scott v. American United Life Ins. Co.*, 2005 WL 2675185 (2005).

the plight of employees for whom every dollar counts. A legislature concerned with underpayment surely would have as great a concern about nonpayment. Yet, the majority insists that it can discern a legislative "policy choice" to condemn payment that is a penny short, whether five days or five years late, but to turn its back on nonpayment and impose no penalty at all. I cannot comprehend why the majority works so hard to divorce two statutes that work in such harmony. A time-of-payment requirement is necessary to effectuate a rate-of-pay requirement. Although a legislature could theoretically enact one without the other, there would be no reason for it to do so. To be of use, a rate of payment requirement must be tethered to time, just as a date for payment waits in need of the sum it must pay.

For over 60 years it has been the law of this land that a requirement that a wage be paid at a certain rate is, and must be, accompanied by an obligation to pay that wage on time. In Oregon, on time means on payday. I cannot countenance a departure from those precepts, not because they originated with me, but because they have been cognizable by all until this day. I must, therefore, respectfully dissent.