44 May 28, 2026 No. 458

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

John PATRICK,
individually and on behalf of other similarly situated,
*Plaintiff-Respondent,*

*v.*

McMENAMINS, INC.,
a domestic corporation,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CV25538; A182444

Adrian L. Brown, Judge.

Argued and submitted October 16, 2025.

Misha Isaak argued the cause for appellant. Also on the briefs were John B. Dudrey, J. Alexander Bish, and Stoel Rives LLP.

Nadia H. Dahab argued the cause for respondent. Also on the brief were Stephanie J. Brown, Karen Moore, and Shuck Law, LLC, Washington.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

In late March 2020, at the beginning of the COVID-19 pandemic, defendant McMenamins, LLC, paid its employees five days after their regular payday. It is undisputed that all of the employees at issue were earning an hourly rate above the applicable minimum wage and that all were paid in full five days later. Plaintiff John Patrick brought this class action on behalf of himself and similarly situated employees, claiming, as relevant to this appeal, that the late payment of wages constituted a minimum-wage violation under ORS 653.025. In essence, in plaintiff's view, paying an employee's wages after the regular payday amounts to paying an hourly rate of zero on payday, giving rise to a minimum-wage violation. The trial court agreed and, on cross-motions for summary judgment, granted summary judgment for plaintiff and denied summary judgment for defendant on the minimum-wage claim. Defendant appeals.

As explained below, we conclude that defendant did not "employ or agree to employ" plaintiff "at wages computed at a rate lower than" the minimum wage, ORS 653.025, and therefore did not violate the minimum-wage statute as a matter of law. Defendant employed plaintiff to work for $16.00 per hour, and at no point were his wages computed at a rate lower than that. The legislature intended the minimum-wage law to serve a different purpose from the laws relating to timing of wage payment, and it drafted ORS 653.025 accordingly. Any remedy for late payment of wages computed at a rate above the minimum wage lies in the statutes addressing the timing of wage payment, not the minimum-wage statute. Accordingly, we reverse and remand.

## SUMMARY JUDGMENT STANDARD

A party in a civil action may move "for a summary judgment in that party's favor as to all or any part of any claim or defense." ORCP 47 A (claimant); ORCP 47 B (defendant). The moving party is entitled to summary judgment if "the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." ORCP 47 C. On cross-motions for

summary judgment, we view the record for each motion in the light most favorable to the opposing party to determine whether there is any genuine issue of material fact or, if not, whether either party is entitled to judgment as a matter of law. *Ghiglieri v. Tomalak*, 304 Or App 717, 718, 469 P3d 262 (2020). In this case, the issue that we address on appeal is solely one of statutory construction. That is, as to whether defendant paying wages after the regular payday constituted a minimum-wage violation, the parties agree the material facts are undisputed and that either plaintiff or defendant is entitled to prevail as a matter of law.

## FACTS

Plaintiff worked as a server at McMenamins Edgefield. He was an at-will employee with an agreed rate of pay of $16.00 per hour. On March 17, 2020, defendant temporarily closed most of its properties due to the COVID-19 pandemic. Its employees' next regular payday was Friday, March 27, 2020. Defendant lacked adequate funds to cover its payroll obligations and, on March 26, informed employees that their paychecks would be delayed until the following week. On Wednesday, April 1, 2020, after receiving cash from its owners, defendant paid its employees, including plaintiff, all their wages earned in the prior pay period.

Plaintiff subsequently brought this class action against defendant, asserting two wage claims in the alternative. Only the second claim is at issue on appeal.[1] In that claim, plaintiff alleged that defendant violated the minimum-wage law, ORS 653.025, by not paying its employees their earned wages on their regular payday, March 27, 2020, and instead paying them five calendar days later on April 1, 2020. The parties cross-moved for summary judgment. Based on its construction of the relevant statutes, the trial court granted summary judgment for plaintiff on the minimum-wage claim, denied summary judgment for defendant on that claim, and awarded penalty wages.

---

[1] The first claim was premised on plaintiff's employment having been terminated on March 17, 2020. The trial court granted summary judgment for defendant on that claim, concluding as a matter of law that plaintiff's employment was not terminated on that date. Plaintiff has not appealed that ruling, so his first claim is no longer at issue.

ANALYSIS

Defendant assigns error to the trial court's summary judgment rulings on the minimum-wage claim, arguing that the court misconstrued the applicable statutes in concluding that the late payment of wages in March 2020 constituted a minimum-wage violation.[2] Plaintiff maintains that the trial court correctly construed the statutes.

The correct construction of a statute is a question of law. *State v. Ramoz*, 367 Or 670, 704, 483 P3d 615 (2021). In construing a statute, our "paramount goal" is to discern the enacting legislature's intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). We first examine the disputed text in context, recognizing that the text "must be given primary weight in the analysis," because "[o]nly the text of a statute receives the consideration and approval of a majority of the members of the legislature, as required to have the effect of law." *Id.* "The formal requirements of lawmaking produce the best source from which to discern the legislature's intent, for it is not the intent of the individual legislators that governs, but the intent of the legislature as formally enacted into law[.]" *Id.* We next consider any pertinent legislative history of which we are aware, keeping in mind that legislative history may be used to illuminate the text but not vary it. *Id.* at 172, 177-78. Finally, if the legislative intent "remains unclear after examining text, context, and legislative history," then we "resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.* at 172.

In this case, the disputed issue is whether defendant's payment of its employees' wages five days after their regular payday amounted to a violation of the minimum-wage law, ORS 653.025, such that plaintiff was entitled to penalty wages under ORS 653.055. We begin with the text.

ORS 653.025(1) provides that "for each hour of work time that the employee is gainfully employed, no employer

---

[2] Defendant raises two assignments of error on appeal, directed to different aspects of the summary judgment rulings. Our resolution of the first issue, regarding whether late payment qualifies as a minimum wage violation under ORS 653.025, makes it unnecessary to reach the second issue, regarding willfulness under ORS 652.150.

*shall employ or agree to employ any employee at wages computed at a rate lower than*" the statutory minimum, which, in this case, the parties agree was $12.50 per hour.[3] (Emphasis added.) "'Employ' includes to suffer or permit to work * * *." ORS 653.010(2). "'Wages' means compensation due to an employee by reason of employment[.]" ORS 653.010(10). The remedies for a minimum-wage violation are stated in ORS 653.055. The employer is liable for the full amount of wages, as well as penalty wages, and may be ordered to pay the employee's attorney fees. ORS 653.055. They are also subject to a suit by the Commissioner of the Bureau of Labor and Industries (BOLI). *Id.*

The question, then, is whether defendant employed or agreed to employ plaintiff "at wages computed at a rate lower than" $12.50 per hour. ORS 653.025. Or, to frame the issue in line with plaintiff's theory, the question is whether defendant employed or agreed to employ plaintiff at a rate of zero dollars per hour. Defendant did not. It is undisputed that defendant agreed to pay plaintiff $16.00 per hour for his work and that, for the pay period at issue, defendant computed plaintiff's wages at a rate of $16.00 per hour for each hour worked. Defendant paid out those wages five days later than the regular payday, but that does not change the rate at which defendant computed them and plaintiff earned them. Employees are obviously entitled to timely payment of their wages, as recognized in other statutory provisions that we discuss shortly, but delayed payment of earned wages *computed at a rate above the statutory minimum* is fundamentally different from a minimum-wage violation. Under the plain text of ORS 653.025, defendant did not violate the minimum-wage law in March 2020, because it never employed or agreed to employ plaintiff at wages computed at a rate lower than $12.50 per hour.

Our reading of the plain text of ORS 653.025 is supported by the larger context of the employment laws generally, particularly other statutory provisions that address the collection of wages as distinct from the earning of wages. Under ORS 652.120(1), "[e]very employer shall establish

---

[3] ORS 653.025 provides different statutory minimum wage rates for urban and non-urban employers and for different time periods.

and maintain a regular payday, at which date the employer shall pay all employees the wages due and owing to them." Paydays must be at least every 35 days, unless otherwise agreed in advance. ORS 652.120(2), (4). Where an employer fails to pay the full amount due and owing on the regular payday, and it is undisputed what amount is due, ORS 652.120(5) sets a deadline for the employer to pay the unpaid amount to the employee, which varies depending on whether it is less or more than five percent of the employee's gross wages that were due on the regular payday. If the unpaid amount is less than five percent of the gross wages, it must be paid to the employee no later than the next regular payday. ORS 652.120(5)(a). If it is more than five percent, then it must be paid "within three days after the employer has notice of the unpaid amount, excluding Saturdays, Sundays and holidays."[4] ORS 652.120(5)(b).

Violation of ORS 652.120 is a Class A violation, which carries a maximum fine of $4,000. ORS 652.990(3) ("Violation of ORS * * * 652.120 is a Class A violation."); ORS 153.018(3)(a) (setting maximum fines for violations committed by corporations). An employer who fails to timely pay wages when due also risks a wage action by the employee, who, in most circumstances, will be entitled to attorney fees if successful. *See* ORS 652.200(2) (addressing attorney fees in "any action for the collection of wages"). Finally, BOLI may get involved. BOLI has authority to bring wage claims on behalf of employees in court or in administrative proceedings. ORS 652.330(1). And if BOLI concludes after investigation that "an employer is failing to pay wages within five days of a payday scheduled by the employer," its commissioner "may require the employer to give a bond in such amount as the commissioner determines necessary, with sufficient surety, to assure timely payment of wages due employees for such future period as the commissioner considers appropriate." ORS 652.125(1).

The legislature also has addressed the timing of payment of final wages upon termination, including

---

[4] Defendant has not made any arguments under ORS 652.120(5)(b), and we express no opinion on the applicability of ORS 652.120(5)(b) in these circumstances.

providing remedies for nonpayment. ORS 652.140 requires employers to pay "all wages earned and unpaid" upon the termination of employment, with the deadline ranging from immediate payment to five business days, depending on the circumstances. Unlike with payday violations, an employer who fails to timely pay a terminated employee's final wages cannot be found guilty of a violation and ordered to pay a fine. *See* ORS 652.990 (identifying violations of various employment statutes as classed violations or misdemeanors, and not listing ORS 652.140). However, the employer may be liable to the employee for penalty wages. *See* ORS 652.150(1) (providing for penalty wages, subject to certain limitations, "if an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145"). Further, as with payday violations, the employer will usually be liable for the employee's attorney fees if a successful wage action results. *See* ORS 652.200(2) (addressing attorney fees in "any action for the collection of wages").

As the foregoing discussion illustrates, the legislature has acted to address a variety of different concerns affecting workers, including low wages, untimely payment of wages during employment, and untimely payment of final wages upon termination. The legislature has adopted different deadlines, consequences, and remedies in each instance, as an exercise of policymaking. We disagree with plaintiff's suggestion that failure to pay an employee's earned wages on payday must be viewed as a minimum-wage violation because, otherwise, the employee will be unable to obtain penalty wages. It is true that penalty wages are not one of the remedies available for a payday violation, but that is a legislative choice. It appears to be an intentional choice, not an accidental omission, but, in any event, the statutory language controls.[5] We cannot read penalty wages into the remedies for

---

[5] When ORS 652.120(5) was enacted in 2007, the legislature appears to have been operating from the understanding that payday violations are not subject to penalty wages. *See* Audio Recording, House Committee on Business and Labor, HB 2258, Feb 7, 2007, at 0:26:35 (statement of Commissioner of Labor and Industries Dan Gardner) (explaining, regarding the bill that became ORS 162.120(5), that "there are no penalties for violations of this law and the employees would not be entitled to a penalty wage unless or until they terminate their employment and are not timely paid all the wages that they are due"), https://records.sos.state.or.us/ORSOSWebDrawer/Record/4208280 (accessed May 14,

a payday violation when the legislature has not provided for them, any more than we could treat failure to timely pay final wages at termination as a Class A violation when the legislature has not made it one. *See North Marion Sch. Dist. #15 v. Acstar Ins. Co.*, 343 Or 305, 325, 169 P3d 1224 (2007) (*North Marion*) ("This court has no license to *imply* different or further rights and liabilities where the legislature has fashioned them expressly." (Emphasis in original.)).

Although not directly on point, we find notable the Supreme Court's discussion of an analogous situation in *North Marion*. That case involved a statute establishing the prevailing wage rate for employees on certain public construction projects—*former* ORS 279.350, *repealed by* Or Laws 2003, ch 794, § 332—the violation of which triggered a "liquidated damages" penalty under *former* ORS 279.356, *repealed by* Or Laws 2003, ch 794, § 332. 343 Or at 318. The defendant had paid the plaintiffs "at the statutorily mandated prevailing rates of wage, but delivered their paychecks weeks after the date on which [the employer] owed them under ORS 652.140." *Id*. The plaintiffs claimed an entitlement to the penalty under *former* ORS 279.356, arguing that "*late* payment of wages *at the statutorily mandated rate* of wage is, in law, a failure to pay at the statutorily mandated rate and, therefore is a violation of [*former*] ORS 279.350." *Id*. (emphasis in original).

The Supreme Court disagreed. It distinguished between "the obligation to pay wages at a particular hourly rate" and the obligation to pay wages within a particular timeframe. *Id*. at 319-20 (emphasis omitted). Paying an hourly rate lower than the statutorily mandated rate violated *former* ORS 279.350 and triggered the liquidated-damages penalty in *former* ORS 279.356. *Id*. Late payment of wages, by contrast, did not violate *former* ORS 279.350, as that statute did not address the timing of payment. The remedy for

2026). That fact is not relevant to our construction of ORS 653.025 and ORS 653.055, which were enacted in 1967, as we are concerned only with the intent of the *enacting* legislature when construing a statute. *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995) ("The proper inquiry focuses on what the legislature intended at the time of enactment and discounts later events."); *accord Gaines*, 346 Or at 171. We mention it only as an illustration that the legislature is generally aware that different types of statutory violations may have different remedies.

late payment lay not in *former* ORS 279.350, which set a mandatory rate, but instead in "the wage and hour provisions of ORS chapter 652," specifically those regarding the timing of wage payment. *Id*. at 320. Concluding otherwise would require the court to "rewrite" the statutes. *Id*. at 322. The court explained:

> "The fact that the statutes are complementary and work together does not mean that this court can mix and match the obligations and remedies that they contain. A contractor's statutory obligation to pay wages on a particular day is independent of the statutory obligation to compensate workers at not less than the prevailing hourly wage rate. The legislature could repeal either obligation without affecting the other. The legislature was entitled to—and did—create different remedies and liabilities for those legally distinct and independent obligations. Our analysis gives effect to the legislature's policy choice to treat the failure to pay wages timely as a different problem than paying too low an hourly rate of wage."

*Id*. at 323. The court also noted that treating late payment as a rate violation would undermine the flexibility that the legislature had built into the payment-timing statutes. *Id*. at 323-24 (acknowledging that "the legislature did not provide for automatic economic penalties any time an employer, for any reason, does not pay its employees on the regular paydate" and suggesting that that was an intentional policy choice, in part to allow flexibility for situations such as "a computer glitch, a fire, an earthquake, a repeat of the 1996 flooding disasters through the Willamette Valley," or the like).

Similarly, here, we understand the legislature to have enacted a minimum-wage law, ORS 653.025, that serves a specific purpose and has specific remedies, while keeping in place wage-collection laws that address different concerns and have their own sets of remedies. The minimum-wage law has to do with the computed rate of pay, while the wage-collection laws have to do with the timing of wage payment. As was the case with the statutory scheme at issue in *North Marion*, "[t]he legislature was entitled to—and did— create different remedies and liabilities for those legally distinct and independent obligations," and our construction of

the statute "gives effect to the legislature's policy choice to treat the failure to pay wages timely as a different problem than paying too low an hourly rate of wage." 343 Or at 323.

The larger context for the minimum-wage statutes thus confirms our reading of the plain text of ORS 653.025. That leaves legislative history. When construing a statute, "[l]egislative history may be used to confirm seemingly plain meaning and even to illuminate it" or, conversely, to show that "superficially clear language actually is not so plain at all—that is, that there is a kind of latent ambiguity in the statute." *Gaines*, 346 Or at 172. However, "[w]hen the text of a statute is truly capable of having only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different." *Id*. at 173. "Legislative history may be used to identify or resolve ambiguity in legislation, not to rewrite it." *Halperin v. Pitts*, 352 Or 482, 495, 287 P3d 1069 (2012).

Nothing in the legislative history of ORS 653.025 reveals any latent ambiguity in the statute. Plaintiff points to a remark made by Belton Hamilton, Chief Counsel to the Bureau of Labor, regarding the proposed amendment that became ORS 653.055(1)(b), the civil penalty provision for minimum-wage violations. Hamilton described the existing penalty-wage provision for wage violations upon termination of employment—which he was proposing to make applicable to minimum-wage violations—as providing penalty wages "for the time [an employee] has to wait" for their final wages. Audio Recording, House Committee on Labor and Management, HB 1340, Mar 10, 1967, at 0:27:40 https://records.sos.state.or.us/ORSOSWebDrawer/Record/3181597 (accessed May 14, 2026). Plaintiff views that remark as supporting the idea that the legislature was interested not only in an employee's hourly rate of pay but also the timeliness of wage payment when enacting ORS 653.055(1)(b).

We are unpersuaded. In context, Hamilton appears to have been referring only to the time that a terminated employee has to wait for payment of final wages that should have been paid earlier. But, even assuming that he intended his characterization of the existing law to carry over to how penalty wages would work for a minimum-wage violation,

Hamilton's statement conveys only that, under the proposal, an employee who is employed to work at a rate lower than minimum wage, gets paid at that below-minimum rate, and has to wait to get paid the differential from the lawful rate will receive penalty wages, just as a terminated employee who is not paid in full upon termination and has to wait to receive the full amount due to them will receive penalty wages.[6] *Id.* We do not understand Hamilton to have been suggesting anything more than that. In any event, a single, at-best-ambiguous remark would not change our reading of the plain text of ORS 653.025.

Having considered the text, context, and legislative history, we conclude that the trial court erred in its construction of ORS 653.025. Defendant did not employ or agree to employ plaintiff "at wages computed at a rate lower than" $12.50 per hour. ORS 653.025(1). It employed and agreed to employ plaintiff at wages computed at a rate of $16.00 per hour. On an occasion in late March 2020, defendant paid plaintiff his earned wages five days later than the regular payday, but a late payment of wages computed at a rate above the statutory minimum wage is not a minimum wage-violation under ORS 653.025. To the extent that the late payment violated the wage laws—a question we do not decide—it was a different type of violation, not a minimum-wage violation.

---

[6] As previously mentioned, an employer who violates the minimum-wage law, ORS 653.025, is liable for penalty wages under ORS 653.055. Consistent with Hamilton's proposal, that is accomplished through ORS 653.055(1)(b), which provides that an employer who pays an employee wages calculated at a rate lower than the statutory minimum is liable "[f]or civil penalties provided in ORS 652.150." The cited statute, ORS 652.150, is the penalty-wage provision for final-wage violations. It provides, subject to various exceptions, that until the final wages are paid in full, "the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced," but in no case for more than 30 days, as a penalty for nonpayment. ORS 652.150. In cross-referencing ORS 652.150, ORS 653.055 effectively adopts the same penalty-wages scheme for minimum-wage violations. But the fact that ORS 652.150 runs penalty wages from the due date does not mean that missing a due date is itself a minimum-wage violation. To the contrary, ORS 653.025 alone defines a minimum-wage violation, and it defines it as employing or agreeing to employ a person "at wages computed at a rate lower than" the statutory minimum. There must be a violation of ORS 653.025 for the remedy in ORS 653.055 to apply, and the fact that ORS 652.150 refers to the due date for wages in describing how to calculate penalty wages cannot and does not change what constitutes a minimum-wage violation under ORS 653.025.

It follows that the trial court erred in granting summary judgment for plaintiff and denying summary judgment for defendant on plaintiff's minimum-wage claim. It was defendant who was entitled to prevail on that claim as a matter of law.

Accordingly, we reverse and remand for entry of summary judgment in defendant's favor on plaintiff's second claim.

Reversed and remanded.